**Joan HULL, on behalf of herself and others similarly situated, Plaintiff-Appellant,**

**v.**

**CELANESE CORPORATION et al., Defendants-Appellees.**

**No. 579, Docket 74–2126.**

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1975.

Decided March 26, 1975.

Leonard B. Boudin, New York City (Rabinowitz, Boudin & Standard, New York City, K. Randlett Walster and Eric M. Lieberman, New York City, of counsel), for plaintiff-appellant.

Gilbert S. Edelson, New York City (Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, Charles A. Crum and Nadia Colin, New York City, of counsel), for defendants-appellees.

Before OAKES and GURFEIN, Circuit Judges, and TENNEY,[*] District Judge.

TENNEY, District Judge.

This Court today hears the appeal from an order of disqualification of plaintiff's counsel, the law firm of Rabinowitz, Boudin & Standard ("the Rabinowitz firm").[1] The question at issue is whether a law firm can take on, as a client, a lawyer for the opposing party in the very litigation against the opposing party. Factually, the case is novel and we approach it mindful of the important competing interests present. It is incumbent upon us to preserve, to the greatest extent possible, both the individual's right to be represented by counsel of his or her choice and the public's interest in maintaining the highest standards of professional conduct and the scrupulous administration of justice.

The complaint in this action was brought by plaintiff-appellant Joan Hull ("Hull"), an employee of Celanese Corporation ("Celanese"), against Celanese alleging sex-based discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. In its answer, Celanese denied the material allegations of the complaint. Thereafter, the Rabinowitz firm filed a motion seeking leave for five other women to intervene as plaintiffs in the action.[2] One of the proposed intervenors was Donata A. Delulio, an attorney on the corporate legal staff of Celanese. Celanese opposed the proposed intervention and additionally sought the disqualification of the Rabinowitz firm based on the risk that confidential information received by Delulio as Celanese's attorney might be used by the Rabinowitz firm against Celanese in the prosecution of the joint Hull-Delulio claims.[3]

The trial court denied Delulio's motion to intervene[4] and subsequently ordered the disqualification of the Rabinowitz firm.[5]

Judge Owen premised the denial of intervention on the fact that Delulio had been active in the defense of this very action, thus raising a serious risk of disclosure of confidential information. He found the opportunity for even inadvertent disclosure to be ever-present.[6]

---

[*] United States District Judge for the Southern District of New York, sitting by designation.

1. 73 Civ. 3725 (S.D.N.Y., July 12, 1974).

2. The motion in addition to the request for intervention, also sought (1) an order permitting the filing of an amended complaint and (2) an order that the action be maintained as a class action.

3. The motion, in addition to the request for disqualification, also sought (1) an order denying plaintiff's motion for intervention and (2) an order striking the class action allegations.

4. 73 Civ. 3725 (S.D.N.Y., May 6, 1974).

5. See n. 1, supra.

6. The trial court noted an interchange of correspondence between Delulio and the Association of the Bar of the City of New York wherein Delulio sought advice regarding, inter alia, the propriety of her intervention in the Hull case. The Association advised against intervention. See 73 Civ. 3725 (S.D.N.Y., May 6, 1974), at 2–3. These letters are set out in full in the Joint Appendix at 125a–132a.

In granting the motion to disqualify the Rabinowitz firm, Judge Owen clearly recognized three competing interests: (1) Hull's interest in freely selecting counsel of her choice, (2) Celanese's interest in the trial free from the risk of even inadvertent disclosures of confidential information, and (3) the public's interest in the scrupulous administration of justice. In balancing these competing interests, the trial court acknowledged the right of Hull to counsel of her choice, but held the interests of Celanese and the public to be predominant. Based upon the relationship between Delulio and the Rabinowitz firm, the preparation by the Rabinowitz firm on the motion to intervene, supporting affidavits, and amended complaint, and the contents of those documents, Judge Owen concluded:

> "The foregoing contents of affidavits prepared by Delulio and the Rabinowitz office are some evidence, in my opinion, of the possibility that Delulio, unquestionably possessed of information within the attorney-client privilege, did in fact transmit some of it to the Rabinowitz firm, consciously or unconsciously." [7]

The trial court felt that the continued retention of the Rabinowitz firm would create at least the appearance of impropriety due to the on-going possibility for improper disclosure.[8] For the reasons stated *infra*, we must affirm.

The unusual factual situation presented here bears repetition in some detail. Hull's employment by Celanese began in 1963; Delulio's employment there began in July 1972. In September of 1972, Hull filed charges with the Equal Employment Opportunity Commission ("EEOC") against Celanese alleging sex-based discrimination in employment. Delulio was assigned to work on the defense of the *Hull* case in February of 1973 and her work on the case continued until September 1973.[9] In the interim, the complaint herein was filed.[10]

It was during September of 1973 that Hull and Delulio met socially for the first time. Two months later Delulio approached Hull to ascertain the name of the law firm representing Hull. As a result of this conversation, Delulio contacted the Rabinowitz firm on November 9, and on November 15, 1973 the Rabinowitz firm filed sex discrimination charges on behalf of Delulio with the EEOC. Delulio thereafter consulted with the Association of the Bar of the City of New York regarding, *inter alia*, the propriety of her intervention in the *Hull* action. By letter dated March 12, 1974, the Association of the Bar of the City of New York advised Delulio against intervention.[11] Subsequently, the motion herein seeking intervention on behalf of Delulio and four other women was filed. Two weeks later Celanese cross-moved to deny intervention and to disqualify the Rabinowitz firm.

### Jurisdiction

■ The order of disqualification has been held by this Court to be a "final order" and hence appealable pursuant to

---

7. 73 Civ. 3725 (S.D.N.Y., July 12, 1974), at 5.

8. Judge Owen initially considered holding a hearing to determine whether there had been actual disclosures, but decided in the negative. He concluded that "a hearing would be self-defeating since it would be necessary to reveal to the Rabinowitz firm in some specificity the extent of Celanese's disclosures to Miss Delulio in the course of ascertaining to what extent, if any, that information reached them." *Id.* at 6.

9. Delulio characterized her work on the *Hull* case as follows:
 > "During the six months that I worked on that case I studied the general regulations of the Equal Employment Opportunities Commission, its procedures and the law on sex

discrimination generally. I obtained specific information from the personnel department at the division concerning salaries and hiring practices. I attended on [sic] interview of the employee's [Hull's] superior, and attended one interview of another division employee. I participated in a conference with outside consultants hired by the corporation to prepare statistical information regarding employment within the division. I obtained inter-office memoranda and prepared a memorandum myself regarding the case."
 73 Civ. 3725 (S.D.N.Y., July 12, 1974), at 3.

10. Filed on August 27, 1973.

11. *See* n. 6, *supra*.

28 U.S.C. § 1291. Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800 (2d Cir. 1974) (en banc). *See also* General Motors Corporation v. City of New York, 501 F.2d 639, 644 (2d Cir. 1974). Therefore, jurisdiction to review the order below is clearly in this Court.

## Analysis

 The district court bears the responsibility for the supervision of the members of its bar. Handelman v. Weiss, 368 F.Supp. 258, 263 (S.D.N.Y. 1973); E. F. Hutton & Company v. Brown, 305 F.Supp. 371, 378 (S.D.Tex. 1969). The dispatch of this duty is discretionary in nature and the finding of the district court will be upset only upon a showing that an abuse of discretion has taken place. Richardson v. Hamilton International Corporation, 469 F.2d 1382, 1385–86 (3d Cir. 1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). Moreover, in the disqualification situation, any doubt is to be resolved in favor of disqualification. Fleischer v. A. A. P., Inc., 163 F.Supp. 548, 553 (S.D.N.Y.1958), appeal dismissed, 264 F.2d 515 (2d Cir.), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959).

Factually, this case is distinguishable from our decision in Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973). However, the conclusions reached in that case apply with equal validity here.

In *Emle*, a lawyer who had previously represented Burlington Industries, Inc. was disqualified when he attempted to represent Emle in litigation against Patentex, a Burlington subsidiary. The matters at issue in the two suits were deemed to be "substantially related". *Id.* at 571, citing T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265 (S.D.N.Y.1953). In that instance the

court felt that the invocation of Canon 9 of the Code of Professional Responsibility was particularly appropriate.[12]

In the instant case we have a divergence from the more usual situation of the lawyer switching sides to represent an interest adverse to his initial representation (as in *Emle*). Here, the in-house counsel for Celanese switched sides to become a plaintiff (rather than a lawyer) on the other side. Also, here the matter at issue is not merely "substantially related" to the previous representation, rather, it is exactly the same litigation. Thus, while the cases are factually distinguishable, the admonition of Canon 9 is equally appropriate here. This is, in short, one of those cases in which disqualification is "a necessary and desirable remedy . . . to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information . . . ." *See* Ceramco, Inc. v. Lee Pharmaceuticals, 510 F.2d 268, 271 (2d Cir. 1975).

The Rabinowitz firm argues that they had never worked for Celanese and therefore never had direct access to any confidences of Celanese. They maintain that they carefully cautioned Delulio not to reveal any information received in confidence as an attorney for Celanese, but rather to confine her revelations to them to the facts of her own case. This, they contend would avoid even an indirect transferral of confidential information. They conclude that since they never got any information either directly or indirectly, they could not use the information either consciously or unconsciously.

 This argument, somewhat technical in nature, seems to overlook the spirit of Canon 9 as interpreted by this

---

**12.** Canon 9 of the Code of Professional Responsibility states: "A lawyer should avoid even the appearance of professional impropriety."

While the Code of Professional Responsibility has not been formally adopted in the Southern District, its salutary provisions have consistently been relied upon by the

courts of this district and circuit in evaluating the ethical conduct of attorneys. *See, e. g.*, General Motors Corporation v. City of New York, 501 F.2d 639 (2d Cir. 1974); Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973); Handelman v. Weiss, 368 F.Supp. 258 (S.D.N.Y.1973).

Court in *Emle*. We credit the efforts of the Rabinowitz firm to avoid the receipt of any confidence. Nonetheless, *Emle* makes it clear that the court need not "inquire whether the lawyer did, *in fact*, receive confidential information. . . ." Emle Industries, Inc. v. Patentex, Inc., *supra*, 478 F.2d at 571. Rather, "where 'it can reasonably be said that in the course of the former representation the attorney *might* have acquired information related to the subject matter of his subsequent representation,' *T.C. Theatre Corp., supra* [113 F.Supp.], at 269 (emphasis supplied), it is the court's duty to order the attorney disqualified." *Id.* at 571. The breach of confidence would not have to be proved; it is presumed in order to preserve the spirit of the Code.

The Rabinowitz firm had notice that Delulio had worked on the defense of the *Hull* case and should have declined representation when approached. Had Delulio joined the firm as an assistant counsel in the *Hull* case, they would have been disqualified. Here she joined them, as it were, as a client. The relation is no less damaging and the presumption in *Emle* should apply.

Our holding herein is distinguishable from the result reached in Meyerhofer v. Empire Fire and Marine Insurance Co., 497 F.2d 1190 (2d Cir.), cert. denied, 419 U.S. 998, 95 S.Ct. 314, 42 L.Ed.2d 272 (1974). There it was held that disqualification was unnecessary since the lawyer had acted properly in defending himself "against 'an accusation of wrongful conduct.'" *Id.* 497 F.2d at 1194–95.

The novel factual situation presented here dictates a narrow reading of this opinion. This decision should not be read to imply that either Hull or Delulio cannot pursue her claim of employment discrimination based on sex. The scope of this opinion must, of necessity, be confined to the facts presented and not read as a broad-brush approach to disqualification.

The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. Recognizably important are

Hull's right to counsel of her choice and the consideration of the judicial economy which could be achieved by trying these claims in one lawsuit. These considerations must yield, however, to considerations of ethics which run to the very integrity of our judicial process.

Accordingly, the order of the district court is affirmed.