**J. P. FOLEY & CO., INC., et al., Plaintiffs-Appellees,**

v.

**Oliver D. VANDERBILT et al., Defendants,**

**Arthur Young & Company, Defendant-Appellant.**

**No. 103, Docket 75–7245.**

United States Court of Appeals, Second Circuit.

Argued Sept. 4, 1975.

Decided Oct. 9, 1975.

David Hartfield, Jr., New York City (White & Case, New York City, Thomas Kiernan, Edmond C. Gregorian, Jeffrey A. Barist, Allan L. Gropper, New York City, of counsel), for defendant-appellant.

Lawrence Milberg, New York City (Milberg & Weiss, New York City, Melvyn I. Weiss, Samuel H. Turetsky, New York City, of counsel), for plaintiffs-appellees.

Before KAUFMAN, Chief Judge, and MULLIGAN and GURFEIN, Circuit Judges.

PER CURIAM:

This is an appeal from an order of the Hon. Charles H. Tenney, United States District Judge, Southern District of New York, entered on April 16th, 1975, denying the motion of defendant-appellant Arthur Young & Co. (Young) to disqualify the firm of Milberg and Weiss from further representation of the plaintiffs in this case.

The plaintiffs, represented by Leonard Feldman, Esq., entered into negotiations in early 1970 with Blair & Co. (Blair), a member of the New York Stock Exchange, which culminated in plaintiffs in effect lending Blair approximately $3 million on April 3, 1970,[1] which plaintiffs allege resulted in a total loss due to a liquidation of Blair's subordinated securities ordered by the Stock Exchange on April 6, 1970. Blair & Co. was subsequently liquidated in bankruptcy proceedings. Plaintiffs thereupon brought the present action, pursuant to the Securities Exchange Act of 1934 as well as common law fraud principles, against Blair, Young, and certain officers and directors of Blair. Plaintiffs allege that they relied in making their agreement upon a Statement of Financial Condition of Blair certified by Young. As the result of depositions conducted by White & Case as counsel for Young, that law firm determined that the testimony of Feldman, who had represented the plaintiffs in the negotiations with Blair, was essential to the plaintiffs' case. On May 20th, 1974 White and Case advised Milberg & Weiss, who were acting as trial counsel for plaintiffs, that the A.B.A. Code of Professional Responsibility[2] required their withdrawal from the case since Feldman was counsel to the Milberg firm and was so listed on the firm's letterhead. The Milberg firm refused to withdraw claiming that the Code was not applicable because:

1) Feldman would not be called to testify as a witness in their case-in-chief although his testimony might be necessary in rebuttal;

2) Feldman is not "in the firm" of Milberg & Weiss because he is only "of counsel";

3) The withdrawal of Milberg & Weiss would work a "substantial hardship" on the plaintiff clients because of the firm's distinctive value in this case.

Judge Tenney's opinion below expressly did not reach either the second or third point raised by plaintiffs but denied the motion for disqualification sole-

---

1. Plaintiffs loaned $3 million of their own securities to Blair. Blair was to pay interest periodically (based on the then-current market value of those securities). In addition, Blair gave plaintiffs options to buy Blair stock. Blair was permitted to make substitutions in the principal, selling any or all of the securities, replacing them with Blair debentures and retaining for its own account the cash proceeds from the sales.

2. The relevant Disciplinary Rules ("DR") of the Code read in pertinent part:

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"1. If the testimony will relate solely to an uncontested matter.

"2. If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"3. If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"4. As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." DR 5-101(B).

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)." DR 5-102(A).

ly on the ground that the possibility of Feldman's being called as a witness was slight and that even then he would be called only in rebuttal. We note at the outset that our jurisdiction to entertain this appeal is not disputed. *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 270–71 (2d Cir. 1975); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974) (en banc).

We agree with the appellant that the application of the Code here does not depend upon whether Feldman *will* be called but whether, as the Code provides, he *"ought* to be called as a witness" in the action below. Moreover, the Code makes no distinction as to whether he acts as a witness in the case in chief or on rebuttal. Feldman has already been deposed and an examination of the record before us compels the conclusion that his testimony is necessary to the plaintiffs' case and that he "ought" to appear. The deposition of the plaintiff John P. Foley reveals that Feldman appeared at a number of meetings to negotiate with Blair in Foley's absence and that he did not in all cases report his discussions to Foley; it does not appear to be contested that only Feldman can testify for plaintiffs as to these transactions. Some of these meetings appear to be crucial. For example, John Richardson, Esq., house counsel to Blair, in his deposition has testified that he advised Feldman that Blair had suffered losses of about one-and-a-half-million dollars between September 26 and December 31, 1969, that estimated losses for the first two months of 1970 would total approximately two million dollars, and that Blair's book value was zero as of December 31, 1969. Feldman's deposition denies that this information was revealed by Richardson. There are other examples of clear conflict between the testimony of Richardson and that of Feldman which appear to be basic to the determination of the amount and character of the disclosure made by Blair. In view of the plaintiff's obligation to establish a prima facie case it is difficult to imagine how Feldman's testimony will not be pivotal; even if used only on rebuttal, the record before us is persuasive that at some point he "ought" to be called and this is what the Code encompasses.

Although we conclude that Feldman "ought" to be called as a witness, it of course does not follow that the motion to disqualify should be granted. The appellees argue vigorously that Feldman is not "in the firm" of Milberg & Weiss, but that he only shares space with and pays rent to the firm, even though admittedly he was listed as counsel to the firm on its letterhead during the period when he acted as the plaintiffs' attorney in negotiating the investment in issue, and in fact still is so listed. Moreover, plaintiffs urge that the withdrawal of the firm at this point in view of its professional expertise and familiarity with the facts in this case deprives them of their right to counsel of their own choosing and works a substantial hardship upon them. We consider these to be substantial issues of fact which the trial court did not reach and which we are unable to resolve on the record before us. We therefore remand to the district court to proceed consistently with this opinion. To guide the district court and the parties on remand, we call attention to our previous opinions in *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 565, 574 (2d Cir. 1973); *General Motors Corp. v. City of New York,* 501 F.2d 639, 649 (2d Cir. 1974); *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975); and *W. E. Bassett Co. v, H. C. Cook Co.,* 302 F.2d 268 (2d Cir. 1962), aff'g 201 F.Supp. 821 (D.Conn.1961); as well as to ABA Committee on Professional Ethics, Formal Opinions No. 330 at 4–5 (1972) and No. 339 (1975).

GURFEIN, Circuit Judge (concurring):

I concur in the remand with two caveats.

First, I think a court need not treat the Canons of Professional Responsibility as it would a statute that we have no right to amend. We should not abdicate

our constitutional function of regulating the Bar to that extent. When we agree that the Code applies in an equitable manner to a matter before us, we should not hesitate to enforce it with vigor. When we find an area of uncertainty, however, we must use our judicial process to make our own decision in the interests of justice to all concerned.

Second, the interests of justice in this case involve not only the ethics of the lawyer but also the rights of his client, the Foleys. Up to now this court has been largely concerned with breaches of professional ethics caused by alleged former representations by lawyers, applying Canon 4 or Disciplinary Rule 9–101(B), though we have also painted with a broad brush using the color of Canon 9.[1] See *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir. 1973); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corporation,* 496 F.2d 800 (2d Cir. 1974); *General Motors Corp. v. City of New York,* 501 F.2d 639 (2d Cir. 1974). And compare *Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir. 1975).

In *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 271 (2d Cir. 1975), we noted that these cases were based on "the need to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information."

Having made my own reservations explicit, I would also direct the District Court to give the Foleys, after affording them full information about the problem, a chance to express their own preference. That expression will, of course, not be binding on the court, but if courts are to take action that may adversely affect the client, the client should have a chance to express himself. After all, in cases that do not involve past representation, the attempt by an opposing party to disqualify the other side's lawyer

must be viewed as a part of the tactics of an adversary proceeding. As such it demands judicial scrutiny to prevent literalism from possibly overcoming substantial justice to the parties. I express no views on the ultimate decision to be rendered by the District Court.

---

1. Canon 4 of the Code of Professional Responsibility provides that "A lawyer should preserve the confidences and secrets of a client." Canon 9 of the Code of Professional Responsibility provides that "A lawyer should avoid even the appearance of professional improprie-

ty." Disciplinary Rule 9–101(B) provides that "A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."