The NCK ORGANIZATION LTD., and William E. Greene, Jr., Plaintiffs,

v.

Walter W. BREGMAN, Defendant.

No. 74 Civ. 776.

United States District Court, S. D. New York.

Feb. 17, 1976.

Bisco, Winkler & Higgiston by Leonard G. Bisco, New York City, for plaintiffs.

Weil, Lee & Bergin by Gilbert H. Weil, New York City, for defendant.

MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

Three motions are presently outstanding in this case. Plaintiffs and defendant have made cross-motions for summary judgment and, in addition, on January 3, 1975, plaintiffs moved for an order to disqualify as attorneys for the defendant in this action Donald W. Randall, Esq., and the firm of Weil, Lee and Bergin, Esqs. This last motion was referred for review to United

States Magistrate Harold J. Raby, who, in a report dated March 4, 1975, recommended that a disposition of the disqualification motion be delayed until the summary judgment motions were decided. Accordingly, at this time the court denies both plaintiffs' and defendant's motions for summary judgment and grants plaintiffs' motion of disqualification as to both Mr. Randall and the firm of Weil, Lee and Bergin.

*The Summary Judgment Motions*

■ The controversy in this matter involves defendant Bregman's contract rights against plaintiffs. Bregman contends that under a written contract entered into between the corporate plaintiff (ORG) and plaintiff Greene on August 31, 1972, he as third-party beneficiary enjoyed an option to purchase from Greene 5,000 shares of stock of the corporate plaintiff at $5.47 per share. Bregman further asserts that written contracts of June 17, 1970 and October 25, 1967 between him and ORG's corporate predecessor obligated ORG to repurchase those same shares from him at their book value.

Bregman, by certified letter on November 5, 1973 attempted to exercise his alleged option and purchased the 5,000 shares from Greene who, by letters dated November 29, 1973 and December 7, 1973, refused to transfer. He now asserts that this failure to honor the option prevented him from reselling the shares to ORG at their book value as of December 31, 1973, an amount more than double what would have been his purchase price under the option.

The ultimate relief sought by plaintiffs in this case is a judgment 1) declaring the respective rights and obligations of the parties in respect to the transactions described above; 2) decreeing that defendant is not entitled to exercise the Greene option for the purchase of 5,000 shares of Class B stock of ORG after the termination of his employment by NCK, a wholly owned subsidiary of ORG; and 3) decreeing that in any case, unless defendant agrees that said stock may be purchased by ORG at the same price paid by defendant to plaintiff Greene, he is not entitled to exercise the Greene option or is bound to resell said shares to ORG at the same purchase price.

The court finds itself unable to grant summary judgment on the motion of either side in this case because of unresolved issues of material facts. While the contracts at issue in the case seem clear on their face, of particular concern to this court is plaintiffs' claim that defendant, as senior vice president and director of ORG and president and director of its wholly owned subsidiary, NCK, owed plaintiff corporation a fiduciary duty which he failed to exercise in allowing himself to be named as a beneficiary of the ORG-Greene contract without notifying the corporation of the existence of the June 17, 1970 contract, which apparently allowed him to sell whatever shares he obtained in ORG back to the company at book value regardless of the length of time he had held them. This was in contradistinction to the arrangements as to all other executives in the company, who were required to hold such securities at least three years during which they were employed by the company before acquiring the right of book value redemption.

The New York Court of Appeals, in an opinion by Justice Cardozo, noted that a "constant duty rests on a trustee to seek no harsh advantage to the detriment of his trust, but rather to protest and renounce if through the blindness of those who treat with him he gains what is unfair." *Globe Woolen Co. v. Utica Gas & Electric Co.*, 224 N.Y. 483, 492, 121 N.E. 378, 381 (1918). In that case, a contract made by defendant corporation of which a Mr. Maynard was a director in common with the plaintiff corporation was held subject to annulment because Mr. Maynard, though not voting and though he kept "silent," knew or should have known that it was an unfair contract. The court noted that a fiduciary in such an instance "takes the risk of an enforced surrender of his bargain if it turns out to be improvident." (p. 490, 121 N.E. p. 380).

If plaintiffs in this case are to succeed on such a theory of law, the court finds that there remains a considerable number of fact questions to be resolved. These in-

clude: 1) the question of whether or not the corporation and its representatives were indeed unaware of the 1970 Bregman employment contract at the time the Greene option contract was being negotiated; 2) the question of defendant's knowledge of such corporation ignorance and, indeed, of the existence of the Greene option negotiations before their consummation; and 3) a showing that defendant's failure to disclose affected ORG's decision to enter into the option contract.

Because of the existence of such unsettled questions of material fact, the court must deny both plaintiffs' and defendant's motions for summary judgment.

*The Motion to Disqualify*

The basis for this motion to disqualify as attorneys for defendant in this action Donald W. Randall and the firm of Weil, Lee and Bergin rests on the fact that Mr. Randall, following the termination of his services as house counsel to plaintiff corporation, became an attorney for defendant Bregman. Furthermore, in that capacity, he conferred concerning the merits of this litigation with the attorneys of record for defendant, Weil, Lee and Bergin.

Canon 4 of the Code of Professional Responsibility states specifically that "[c]are should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure." In interpreting the canon, the Second Circuit has noted that "the court need not, indeed cannot, inquire whether the lawyer did, *in fact*, receive confidential information during his previous employment which might be used to the client's disadvantage." *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). This is consistent with Canon 9 which requires that a lawyer avoid even the "appearance of impropriety."

 The district court bears the responsibility for the supervision of members of its bar, and while decisions regarding the dispatch of this duty are discretionary any doubts which arise in considering a disqualification motion must be resolved in favor of disqualification. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). Applying such criteria and having reviewed the facts in this case, the court can come to no other conclusion than that Randall and the Weil firm must be disqualified.

Randall was in the employ of ORG and NCK from September 1, 1967 until July 15, 1973. Throughout his employment there, he served as house counsel to NCK and held the title of general counsel and vice president. Among the duties which he fulfilled in this position was the preparation of the 1970 agreement which gave defendant Bregman the right to sell all shares of company stock back to the company at book value. He also was involved in the transactions leading up to the ORG-Greene options contract which is also at issue in the instant action.

Despite this intimate involvement with the affairs of ORG and NCK, immediately upon termination of his employment with those corporations on July 15, 1973, he undertook to represent defendant Bregman against NCK in the very matters on which he had formerly worked for NCK. During the course of such representation, Randall consulted with the Weil firm, which was eventually to become counsel of record in the present case, and he consulted with both the Weil firm and defendant Bregman on their defense and counterclaim in this case.

As the court noted in the portion of this opinion dealing with the summary judgment motions, there remain to be considered in this case substantial questions of fact as to the state of mind of both plaintiffs and defendant. Of particular relevance are their states of mind during particular transactions, at which time Randall was serving as house counsel to NCK. Given this posture of the case, Randall's representation of defendant flies in the face of Canons 4 and 9, and he must be disqualified from further participation in this matter.

This same sanction of disqualification must be applied to the Weil firm. While that firm at no time actually represented either of the plaintiffs to this action, their admitted consultation with Randall regarding this case places them in the same position as if they had. The situation here is very similar to that existing in the case of *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir., 1975), where a law firm was disqualified for taking on as a plaintiff-client in a sex discrimination suit an attorney who as house counsel to the corporation being sued had originally worked on the defense. The Second Circuit noted in that case that the firm in question would also have been disqualified had the former house counsel joined the firm as an assistant counsel in the particular case rather than as a client. 513 F.2d at 572. While in the instant case, Randall had not participated for NCK in the actual litigation now at issue, his work on the transactions underlying such litigation make his present involvement equally culpable. Nor can he now represent to the court that he was not an "assistant counsel" in this particular case, since the evidence shows that, whatever title he might choose for himself, his activities in behalf of defendant in conjunction with the Weil firm were sufficient to disqualify both him and said firm from further participation in this action.

Accordingly, both plaintiffs' and defendant's motions for summary judgment are denied, and plaintiffs' motion for the disqualification of Randall and the Weil firm is granted.

SO ORDERED.