William FRESCHI, Jr., As Trustee of William Freschi Trust, Plaintiff,

v.

GRAND COAL VENTURE, Bandler & Kass, Ground Production Corporation, William J. Werner, Jack Mitnick, Robert Sylvor, William C. Sherr, Mineral Resources Development, Inc., and H. Jean Baker, Defendants.

No. 81 Civ. 4331 (RWS).

United States District Court, S.D. New York.

Jan. 26, 1983.

Layton & Sherman, New York City, Bowker, Elmes, Perkins, Mecsas & Gerrard, Boston, Mass., for plaintiff; Daniel J. Brooks, New York City, Robert C. Gerrard, Lawrence G. Green, Boston, Mass., of counsel.

Schwarzfeld, Arnoff & Shore, P.C., New York City, for defendants; Neal Schwarzfeld, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff William Freschi, Jr. ("Freschi"), as trustee of the William Freschi Trust has requested leave to file a second amended complaint pursuant to Fed.R.Civ.P. 15(a) to include a legal malpractice claim. Defendants have moved for an order disqualifying the firm of Bowker, Elmes, Perkins, Mecsas & Gerrard, attorneys for Freschi, on the ground that such representation is in contravention of Disciplinary Rule 5–102(A) and Ethical Considerations 9–2 and 9–6 of the Code of Professional Responsibility. For the reasons indicated below, Freschi's motion is granted, and defendant's motion is denied. The facts and prior proceedings in this action are set forth in decisions dated September 28, and May 26, 1982 and August 7, 1981, and familiarity with those decisions is assumed.

Under Rule 15(a) Fed.R.Civ.P. leave to amend a pleading is to be freely granted. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Defendants urge that Freschi's second amended complaint fails to allege the requisite elements of a legal malpractice claim, and alternatively, that the malpractice claim could be defeated on a motion to dismiss or a motion for summary judgment, citing *United States ex rel. Brensilber v. Bausch & Lomb Optical Co.,* 131 F.2d 545 (2d Cir.1942), *aff'd,* 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417 (1943); *Vul-*

*can Society v. Fire Department of City of White Plains,* 82 F.R.D. 379 (S.D.N.Y.1979); *Eria v. Texas Eastern Transmission Corp.,* 377 F.Supp. 344 (E.D.N.Y.1974); 3 Moore's *Federal Practice* ¶ 15.08[4].

In order to make out a claim of malpractice, Freschi must allege the existence of an attorney-client relationship, negligence on the part of the attorney or some other conduct in breach of that relationship, and that but for the alleged acts of malpractice, the client would have been able to proceed in a manner other than that which actually eventuated. *See Spector v. Mermelstein,* 361 F.Supp. 30 (S.D.N.Y.1972), *mod'f on other grounds,* 485 F.2d 474 (1973); *Mendoza v. Schlossman,* 87 A.D.2d 606, 448 N.Y.S.2d 45 (2d Dep't 1982); *Parker, Chapin, Flattau & Klimpl v. Daelen Corp.,* 59 A.D.2d 375, 399 N.Y.S.2d 222 (1st Dep't 1977); *Becker v. Julien, Blitz & Schlesinger, P.C.,* 95 Misc.2d 64, 406 N.Y. S.2d 412 (Sup.Ct.N.Y. County 1977), *mod'f on other grounds,* 66 A.D. 674, 411 N.Y.S.2d 17 (1978). In Count V of his second amended complaint, Freschi alleges that on several occasions, Bandler & Kass, Werner, Sylor and Sherr agreed in writing and orally to act as attorneys for the Grand Coal investors. Freschi further alleges that the defendants, through false and misleading representations to him as well as to third persons, prevented Freschi from ascertaining the truth about the Grand Coal scheme. Freschi also alleges negligence on the part of the defendants in connection with the assignment of the mineral leaseholds in Wyoming. Finally, Freschi alleges that the misrepresentations and negligence of the defendants, in hindering Freschi from assessing the true nature of the investment scheme, caused him great financial loss.

These allegations are sufficient for a claim of malpractice. Freschi asserts that they are based on facts that have come to light during discovery, and there is no indication of bad faith or dilatory motive on Freschi's part or of undue prejudice to the defendants. For these reasons, Freschi is granted leave to file a second amended

complaint. Parenthetically, it should be noted that summary judgment would be inappropriate at this juncture. The parties appear to be in the midst of discovery and even on the record presented for this motion, there are genuine issues of fact concerning the existence of an attorney-client relationship, and the scope of representation and nature of defendants' conduct if such a relationship in fact existed.

██ The defendants have moved to disqualify the firm of Bowker, Elmes, Perkins & Gerrard ("Bowker"), asserting that its continued representation of Freschi contravenes disciplinary rule DR 5–102(A)[1] of the Code of Professional Responsibility, N.Y. [Jud.] Law (McKinney 1975) (the "Code") which reads as follows:

· If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial . . . .

Defendants contend that Bowker's letterhead and a certain listing in the Martindale-Hubbell Law Directory indicate that George W. Nostrand ("Nostrand"), an attorney, is a member of the Bowker firm. Further, defendants argue that because Nostrand in connection with two motions considered by the court has submitted affidavits which appear to go to the essence of

Freschi's claim, Nostrand "ought" to be called as a witness at trial, *J.P. Foley & Co. v. Vanderbilt*, 523 F.2d 1357, 1359 (2d Cir. 1975).

Defendants demonstrate that Bowker's letterhead lists as its "Vermont Office" Nostrand's firm, Salmon & Nostrand, and that Salmon & Nostrand's entry in Martindale-Hubbell lists as its "Boston, Massachusetts Office" the Bowker firm. On this basis, defendants argue that Nostrand is a lawyer in the Bowker firm, within DR 5–102(A). However, in *J.P. Foley & Co., supra*, the Second Circuit indicated that to determine whether the "in the firm" language of DR 5–102(A) is satisfied, the focus should be on the actual relationship between the firm and the attorney listed on the letterhead.

Freschi argues vigorously that Nostrand is not "in the firm" of Bowker. According to Nostrand's affidavit, he has never been a partner in Bowker. The law firms of Bowker, Elmes, Perkins, Mecsass & Gerrard of Boston and Salmon & Nostrand of Bellows Falls, Vermont, entered into an agreement forming a regional law firm along with another law firm in the State of Maine. The agreement does not make the partners in each separate law firm partners in the other respective firms. Each firm was established to practice primarily within its respective state, and most critically, is a separate and autonomous financial entity. There is no sharing of profits or losses among the partnerships involved in the ar-

1. Disciplinary Rule DR 5–102(A) reads as follows:

    Withdrawal as Counsel When the Lawyer Becomes a Witness.
    (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).
    Disciplinary rule DR 5–101(B)(1) through (4) reads:
    (B) A lawyer shall not accept employment in contemplated or pending litigation if he

knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
    (1) If the testimony will relate solely to an uncontested matter.
    (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
    (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
    (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

rangement, and unless the lawyers are working jointly on an individual case, the income received from legal work performed by a partner at the separate firm goes to the individual partnership performing the work. Of the "Regional Law Firm" only Bowker is actually representing Freschi.

In light of the foregoing, I can not conclude that there is a traditional partnership arrangement between Bowker and Nostrand. However, even if I were to conclude that Nostrand is in fact "in the firm" of Bowker, literal application of DR 5–102(A) is not required in this case for several reasons. Disqualification is within the sound discretion of the trial court. *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1385 (2d Cir.1976); *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975). There exists no statutory obligation upon the federal courts to apply the Code as enacted by the American Bar Association. *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1293 (2d Cir.1975). Although the Code does set guidelines for the professional conduct of attorneys appearing before the federal bar, *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d at 1386; *Hull v. Celanese Corp.,* 513 F.2d at 571 n. 12, the application of the Code is a part of the court's general supervisory authority to ensure fairness to all who bring their cause to the judiciary for resolution. *See United States v. Springer,* 460 F.2d 1344, 1354 (7th Cir.), *cert. denied,* 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972).

Further, an attempt to disqualify a firm "demands judicial scrutiny to prevent literalism from possibly overcoming substantial justice to the parties." *J.P. Foley & Co.,* 523 F.2d at 1360 (Gurfein, J., concurring); *Norman Norell, Inc. v. Federated Dept. Stores, Inc.,* 450 F.Supp. 127, 130 (S.D.N.Y.1978). DR 5–102(A) is not a *per se* rule which requires a literal application; rather, its application depends "upon the attending facts" in each case. *See* Committee on Ethics and Professional Responsibility of the American Bar Association, Formal Opinion No. 339 (Jan. 31, 1975). *Ross v. Great Atlantic & Pac. Tea Co., Inc.,* 447 F.Supp. 406, 409 (S.D.N.Y.1978). *See also International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1293 (2d Cir.1975) (quoting with approval the following from a brief of the Connecticut Bar Association: "It behooves this court, therefore, while mindful of the existing Code, to examine afresh the problems sought to be met by that Code, to weigh for itself what those problems are, how real in the practical world they are in fact, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits.").

The Second Circuit has adopted a "restrained approach" with respect to disqualification. *Bottaro v. Hatton Associates,* 680 F.2d 895 (2d Cir.1982). Disqualification of an entire law firm should not be imposed unless the claimed misconduct taints the underlying trial or the legal system. *W.T. Grant Company v. Haines,* 531 F.2d 671, 677 (2d Cir.1976); *Greenebaum-Mountain Mtg. Co. v. Pioneer Nat. Title Ins. Co.,* 421 F.Supp. 1348, 1353 (D.Colo.1976).[2] The question is not whether an attorney who has some relationship to the prosecution of a trial may appear as a witness in that trial, but whether the litigation can be conducted in fairness to all with all parties properly represented if the attorney testified. *Wolk v. Wolk,* 70 Misc.2d 620, 333 N.Y.S.2d 942 (Sup.Ct. Monroe County 1972).

This is not a disqualification motion grounded in a potential conflict of interest or breach of confidence. *See United States v. Armedo-Sarmiento,* 524 F.2d 591 (2d Cir. 1975); *Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir.1975); *General Motors Corp. v. City*

---

**2.** It should be noted that Rule 3.7 entitled "Lawyer as Witness" of the Proposed Final Draft, Model Rules of Professional Conduct, A.B.A. Commission on Evaluation of Professional Standards (May 30, 1981), substantially narrows the scope of DR 5–102(A). Rule 3.7 does not require disqualification of an advocate whose associate appears as a witness in the absence of a conflict of interest. *See* Rule 3.7 Notes.

*of New York,* 501 F.2d 639 (2d Cir.1974); *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir.1973). This is not a case in which the attorney actually representing a party may be called to testify, *see Draganescu v. First National Bank of Hollywood,* 502 F.2d 550 (5th Cir.1974), *cert. denied,* 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975), or one in which a partner in a traditionally-structured firm representing a party was intimately involved in the events at the heart of the litigation and other members were involved to a lesser extent, *see MacArthur v. Bank of New York,* 524 F.Supp. 1205 (S.D.N.Y.1981).

Defendants rely on the often-cited policy concern underlying DR 5–102(A), that is, a law firm should avoid the "indelicate" posture of arguing the credibility of a member of his own firm. *See Kroungold v. Triesten,* 521 F.2d 763 (3d Cir.1975). Under the circumstances presented here, however, that concern is allayed because if Nostrand testifies at trial and his credibility is attacked, it is likely that Bowker will attempt to rehabilitate Nostrand by demonstrating to the jury that Nostrand is not actually a member of the Bowker firm, that he did not participate in Bowker's representation of Freschi and that he is not receiving profits from Bowker's representation.

In light of this, defendants have not demonstrated that there is a "particularly acute" issue of "appearances" under Canon 9.[3] *See International Electronics Corp. v. Flanzer,* 527 F.2d at 1295. The Second Circuit has cautioned that Canon 9 "should not be used promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific, ethical and disciplinary rules." *Id.* at 1295. *See also Board of Ed. of City of New York v. Nyquist,* 590 F.2d 1241 (2d Cir.1979).

At this stage of the proceedings the balance of hardships tips in favor of Freschi.[4] If at some point down the road it appears that continuing representation of Freschi by the Bowker firm will prejudice any party to this action, the disqualification motion may be renewed.

For the reasons set forth above, leave to amend the complaint is granted and the disqualification motion is denied.

IT IS SO ORDERED.

---

**3.** Defendants rely on EC 9–2 which reads as follows:

> Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to laymen to be unethical. In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and promptly inform his client of material developments in the matters being handled for the client. While a lawyer should guard against otherwise proper conduct that has a tendency to diminish public confidence in the legal system or in the legal profession, his duty to clients or to the public should never be subordinate merely because the full discharge of his obligation may be misunderstood or may tend to subject him or the legal profession to criticism. When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession.

Defendants also cite EC 9–6, which reads as follows:

> Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; to encourage respect for the law and for the courts and the judges thereof; to observe the Code of Professional Responsibility; to act as a member of a learned profession, one dedicated to public service; to cooperate with his brother lawyers in supporting the organized bar through the devoting of his time, efforts, and financial support as his professional standing and ability reasonably permit; to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety.

**4.** Since July, 1981 the Bowker firm has been engaged in extensive discovery and motion practice in connection with this case.