Pacamor Bearings v. Minebea Co.        CV-90-271-SD  04/11/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Pacamor Bearings, Inc., et al

    v.                                      Civil No. 90-271-SD

Minebea Co., Ltd., et al


O R D E R


This order addresses certain items and issues raised by the parties[1] during the final pretrial conference held on April 1, 1996.[2]


1.  Plaintiff's Exhibit 20

Plaintiffs seek a pretrial ruling on the admissibility of plaintiffs' Exhibit No. 20, a February 24, 1992, internal memorandum from Paul Spencer, an employee of defendants, to Field Sales.[3]  The gist of the memorandum relates the fact that "Kubar

---

[1]Defendants have filed a motion for leave to file a response to plaintiffs' submission, document 236, which is herewith granted.  Defendants' response shall be docketed as of the date of this order.

[2]Those items not addressed herein include: Points VII, XI, and XII from Plaintiffs' Submission and Items C and I from Defendants' Submission.  Such points and items will be resolved by the court in due course prior to the start of trial.

[3]This issue is likewise addressed in Defendants' Submission at 11-12.  Defendants similarly object to Plaintiffs' Exhibit No.

has risen from the dead" and notes that defendants "definitely killed the monster, but must have forgotten to put a stake through the heart."

Potentially damaging though it may be, plaintiffs successfully argued to this court that any evidence regarding the business performance or corporate organization of the firm S/N Precision should be excluded from the trial.  Admission of plaintiffs' Exhibit No. 20 would essentially constitute the act of "opening the door" on evidence relating to S/N Precision.  The choice is thus plaintiffs' to make, whether to proceed with their case in the absence of their Exhibit 20, or to attempt introduction of such exhibit into the evidence and open the door on further evidence relative to S/N Precision.

2.  Plaintiffs' Component Utilization Charts

Using defendants' own records, plaintiffs have generated a series of charts purporting to demonstrate "that there were substantially more import components issued for assembly than the number represented to '100% domestic' ball bearings produced at and shipped from the Chatsworth plant," Plaintiffs' Submission at 5, thus allegedly proving "Plaintiffs' country of origin claim

_____

347, which is a multi-document exhibit.  The court's review of such exhibit indicates that defendants' objection is addressed to the February 18, 1992, lost business report of NMB Corp.

2

under the Lanham Act," id. Defendants question the accuracy of plaintiffs' figures, identifying several "flaws in Plaintiffs' analysis," Defendants' Submission at 3, and generally assert unfair prejudice, id. at 4.

Without cataloging the discovery disputes that have been the hallmark of this litigation, it will suffice to note that same has been hard fought and, at times, bitterly opposed. The product utilization information that forms the underlying data for plaintiffs' exhibits is culled from defendants' own records. The court will allow the use of such charts, and defendants will be free to indicate their insufficiency or inaccuracy, if any, through effective cross-examination.

## 3. O'Connell & Aronowitz Personnel as Witnesses

Plaintiffs have identified three O'Connell & Aronowitz employees, Susan Lustyik, Chuck Miller, and Christine Staats, as potential trial witnesses. Defendants object to this practice for a trio of reasons: (2) no previous disclosure as persons with knowledge of relevant facts; (2) the New Hampshire Code of Professional Conduct precludes same; and (3) their testimony is inadmissible "expert" testimony. Defendants' Submission at 5-6.

Defendants assume that the testimony of such O'Connell & Aronowitz personnel will be "to explain their methodology in

3

selecting, analyzing and comparing certain evidence to prepare charts and graphs that Plaintiffs will use to support their legal theories . . . ." Id. at 5. Citing to Rule 3.7, New Hampshire Rules of Professional Conduct,[4] defendants argue that these witnesses are precluded from testifying at trial.

Assuming, without deciding, that such rule of conduct applies equally to attorneys as well as personnel in their employ, the court notes the New Hampshire Supreme Court's caution that "in applying the disqualification rule, care must be taken 'to prevent literalism from . . . overcoming substantial justice to the parties.'" McElroy v. Gaffney, 129 N.H. 382, 391, 529 A.2d 889, 894 (1987) (quoting J.P. Foley & Co. v. Vanderbilt, 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J., concurring)). Moreover, Rule 3.7(b) seems to contemplate a situation analogous to the one presently at bar, where one attorney will be

---

[4]
**Rule 3.7. Lawyer as Witness**
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work unreasonable hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

4

conducting the case, and other attorneys of the same firm will be called as witnesses during the trial.

In addition, the testimony of the O'Connell & Aronowitz employees seems to be more foundational than opinion. Limiting their testimony to the facts underlying the preparation of the charts will clearly avoid any of the "expert" opinion problems highlighted by defendants. As always, defendants are free to undermine the weight of the testimony through adequate and effective cross-examination.

Accordingly, and in the absence of their actual testimony, the court will allow the O'Connell & Aronowitz employees to testify as to the chart preparation.

4. Evidence Relating to Public Health and Safety

Plaintiffs seek, over defendants' objection, to argue that the substitution of DD steel for 440C created a public health or safety risk. Plaintiffs' assert the need for such argument in order to help prove the "materiality" prong of their misrepresentation claims.

Although admittedly relevant, the court finds the danger of unfair prejudice to severely outweigh any probative value such argument would lend to the proofs. This is a commercial lawsuit involving certain business and competitive torts, not a mass

disaster or personal injury tort claim. The specter of public health or safety implications allegedly arising from the substitution of DD steel in the ball bearings does indeed heighten one's consciousness, but plaintiffs readily admit that the public health and safety argument is merely "[o]ne of the means by which 'materiality' will be shown to the jury . . . ." Plaintiffs' Submission at 9.

Accordingly, while plaintiffs will be permitted to relate to the jury the extensive range of uses for the ball bearings at issue, any mention of the alleged threat to public health and safety shall be avoided.

5. Disgorgement of Defendants' Profits

Plaintiffs seek, as a component of their damage award, the disgorgement of defendants' profits. Such measure of damages is specifically provided for by statute upon successful establishment of a Lanham Act § 1125(a) violation. See 15 U.S.C. § 1117 (1982 & Supp. 1996). Any such award is limited, however, by the "principles of equity." Id.; see also BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1092 (7th Cir. 1994) ("disgorgement is an equitable remedy . . . most appropriate when damages are nominal and the defendant would not otherwise be deterred"). "In assessing profits the plaintiff shall be

6

required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a).

Plaintiffs' Answer to Defendants' Interrogatory Number 10 (attached to Defendants' Submission as Exhibit D) specifically identifies 15 U.S.C. § 1117 as an element of the damages sought or claimed.  Greater specificity does not appear to be required by the statute.  Accordingly, plaintiffs shall be entitled to seek disgorgement of defendants' profits, and defendants shall be permitted to introduce evidence relative to "cost or deduction claimed."  15 U.S.C. § 1117(a).[5]

## 5.  Defendants' Exhibits of Incremental Cost

Plaintiffs seek to exclude certain trial exhibits of defendants which appear, or are represented to appear, to provide in graphic format information that has been previously produced in tabular format.  Plaintiffs further argue that the defense expert that will explain such exhibits, the Arthur Anderson accounting firm, was never designated as an expert for this purpose.

---

[5]The remainder of defendants' arguments are more properly raised in a post-trial motion to alter or amend judgment should equity compel the disgorgement of profits and, as such, will not be addressed at present.

7

## 6. Exhibits Referring to Incremental Costs

Rule 26(a)(2)(B), Fed. R. Civ. P., requires parties to disclose their experts before trial and to provide to the opposing party a written report, prepared and signed by the expert witness, containing a complete statement of all opinions to be addressed by the expert and the basis and reasons therefor. Pursuant to Rule 26(e)(1), Fed. R. Civ. P., a party is under a duty to supplement information contained in its experts' reports and information provided through the depositions of its experts at least thirty days before trial.

Although the graphic depiction of the defendants' cost and sales figures may be new, the court finds that the information utilized in preparation of such exhibits is not. See Defendants' Exhibits 35, 48, 66, 69, 74, and 104. Moreover, the June 20, 1994, expert report of Arthur Anderson identifies "two tests that must be met for a price to be declared unfair." June 20, 1994, Report ¶ 7 (attached to Defendants' Response as Exhibit A). The first is that the price must be substantially less than the actual market value or wholesale price of such articles, and the second is that the "test, and ultimate calculation, of damages is whether or not the alleged unfair prices are below average variable cost . . . . Mr. Blaydon [plaintiffs' damages expert] has not made any of the calculations necessary to respond to

8

either test." Id. ¶¶ 7-8. Defendants further assert that plaintiffs were informed by letter dated February 14, 1996, "that Arthur Anderson would testify that Plaintiffs' expert had failed to 'approximately consider or address the underlying cost and pricing date.'" Defendants' Response at 2.

Defendants unsuccessfully argued in a motion in limine to have pricing information excluded from the evidence. Such evidence, that submitted by both plaintiffs and defendants, will be permitted, "the strength of which to be tested through adequate and proper cross-examination by . . . able counsel." Pacamor Bearings, Inc. v. Minebea Co., ___ F. Supp. ___, ___, No. 90-271-SD, slip op. at 29-30 (D.N.H. Mar. 11, 1996).

7. DD Steel Tests

Plaintiffs argue that certain of defendants' DD steel testing results should be excluded, on grounds of (1) failure to disclose during discovery; (2) hearsay; and/or (3) lack of foundation or authenticity. Plaintiffs' Submission Point VI. Defendants respond to plaintiffs' arguments, Defendants' Response at 3-4, and also ask the court to reconsider its ruling relative to post-1990 test results on DD steel, Defendants' Submission at 7-8.

Defendants assert that their exhibits numbered 154, 130,

9

555, 482, and 518 were all produced during discovery, either independently or as part of a Rule 30(b)(6), Fed. R. Civ. P., response. Defendants withdraw Exhibits 554 and 515. Exhibit 125 was allegedly maintained in Japan, and thus not covered by the Rule 30(b)(6) request.[6]

As to the exhibits allegedly produced during discovery, defendants shall be allowed to offer same during the trial. Exhibit 125 will likewise be allowed, but Exhibits 554 and 515 are to be withdrawn.

Any argument concerning authenticity, relevance, and hearsay will be taken up at trial, if and when any such exhibit is offered into the evidence.

The court further denies defendants' request to reconsider its prior ruling on post-1990 DD steel test results.

## 8. Reconsideration of Trial Schedule

Plaintiffs request the court to reconsider the trial schedule addressed during the April 1, 1996, final pretrial conference and set forth in the final pretrial order of even date. Such request is herewith denied. Trial will be conducted in accordance with the dates identified in the April 1 order.

_____

[6]Exhibit 479 is an order in the Pacamor/Kuber bankruptcy, and does not relate to any DD steel tests.

Plaintiffs further indicate the need to call Mr. Jack Langridge, an officer of defendants resident in New Hampshire. Defendants advise that Mr. Langridge will be out of the country from April 9 to April 19, 1996, but will be available to plaintiffs during the week commencing April 22, 1996. Plaintiffs seek either (1) an order from this court compelling Mr. Langridge to appear on April 17, 1996, or (2) a two-day continuance of the trial, to April 18, 1996.

Insofar as Mr. Langridge will be out of the United States on the date plaintiffs desire his attendance, and in light of the court's desire to adhere to the trial schedule set for this matter, the court declines to adopt either of plaintiffs' suggested requests for relief. Defendants have indicated Mr. Langridge's availability commencing on April 22, 1996, and plaintiffs are thus free to call him to testify any trial day during said week.

## 9. Plaintiffs' Exhibit No. 25

Plaintiffs' Exhibit No. 25 is a September 25, 1989, letter written by Frederick Hochgraf, an independent testing consultant of defendants, to Zia Karim, an employee of defendants. It relates certain impressions and observations he made upon testing the DD steel. Such letter likewise follows, and implicitly

11

references, a joint report authored by Hochgraf and Karim on September 22, 1989, regarding defendants' proprietary DD steel. Defendants seek the exclusion of such exhibit on grounds of hearsay.

Review of the accused exhibit indicates that the contents of such letter are not hearsay, but rather constitute an admission by party-opponent. See Rule 801(d)(2)(D), Fed. R. Evid. ("a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"). Accordingly, such exhibit is admissible and can be referenced during plaintiff's opening statement.

10. Redacted Documents

Plaintiffs have attached in Exhibit P a host of documents containing redactions and request of defendants unaltered copies of same. Defendants respond that said redactions were completed by defendants' prior counsel, and attempts to locate unredacted copies have proved unsuccessful.

Assuming, as the court must, the veracity of defendants' representation to the court, there is nothing more that can be done. If unredacted copies to not exist or cannot be readily accessed, then the redacted copies will have to suffice for

12

trial.  This is not the best result, but the only one available under the circumstances.


11.  Customer Statements

Since defendants do not identify which exhibits this hearsay objection refers to, the court will defer ruling until same are offered at trial.


12.  Evidence of Act of Distributors

Defendants question plaintiffs' legal theory relative to vicarious liability for acts of distributors.  In support thereof, defendants partially quote the relevant RESTATEMENT section concerning same, which reads, in full,

> One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: <u>whether he is an agent for this purpose or is himself a buyer depends on whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit</u>.

RESTATEMENT (SECOND) AGENCY § 14J (1958) (emphasis added).

Resolution of this matter is not required until final approval of the jury instructions and, as such, the court's ruling on same is deferred until such time.

13

13.  Pre-1987 Prices or Average Costs

Defendants object to any exhibits that reference their pre-1987 prices or average costs.  The court has already ruled that evidence predating the relevant limitations period may be introduced.  See Pacamor, supra, ___ F. Supp. at ___, slip op. at 31-32.  Accordingly, defendants' objection is overruled.


14.  Exhibits Not Received and Remaining Objections

Any argument relative to exhibits not received or general relevance objections will be taken up in due course at the time of trial.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 11, 1996
cc:  All Counsel

14