**U. S. ex rel. SHELDON ELECTRIC CO., INC., Plaintiff,**

**v.**

**BLACKHAWK HEATING & PLUMBING CO., INC. and the Fidelity and Casualty Company of New York, Defendants.**

**No. 69 Civ. 4273 (JMC).**

United States District Court, S. D. New York.

Nov. 18, 1976.

Fine, Tofel & Saxl, New York City (Joel A. Reiss, New York City, of counsel), for plaintiff.

Lord, Day & Lord, New York City (John Koshel, Jr., New York City, of counsel), for defendants.

## OPINION

CANNELLA, District Judge.

Defendant's motion, to disqualify the firm of Fine, Tofel & Saxl as counsel for plaintiff, is granted.

On June 23, 1975 the above-entitled case was referred to Magistrate Charles Hartenstine for trial, upon agreement of the parties. Trial solely on the issue of economic duress with respect to the execution of certain releases was scheduled to commence on October 14, 1975. On the day of trial, however, defendant Blackhawk Heating & Plumbing Co., Inc. ("Blackhawk") notified the Magistrate of its intention to move for the disqualification of plaintiff's counsel, Fine, Tofel & Saxl, based upon the anticipated testimony of Robert Tofel, a member of the firm. Trial was adjourned pending disposition of the motion. After a formal motion had been made to the district court, that issue was likewise referred to Magistrate Hartenstine. Unfortunately, the Magistrate passed away while the motion was yet undecided. The Court's order of reference dated June 23, 1975 is therefore vacated to enable this Court to decide the motion.

## FACTS

This lawsuit involves claims asserted by plaintiff Sheldon Electric Co., Inc. ("Sheldon"), an electrical subcontractor, for services rendered to and for the benefit of Blackhawk, and for materials supplied in conjunction therewith. These claims emanate from a subcontracting agreement reached by Sheldon and Blackhawk and reduced to writing on March 12, 1965. From time to time during the performance of this contract various disputes arose between the parties. Although some of these differences were apparently resolved by the execution of a "Waiver and Release of Claims" (hereinafter "Release") on August 4, 1967, Sheldon instituted this action encompassing claims covered by the Release as well as others arising thereafter. Thus, the validity of the Release became the subject of controversy, and it was this controversy that was to be resolved at trial before the Magistrate on October 14, 1975.

## DISCUSSION

■ Blackhawk's motion is predicated upon Disciplinary Rule ("D.R.") 5–102(A) of the Code of Professional Responsibility of the American Bar Association,[1] which reads in pertinent part:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial. . .

Blackhawk contends that Robert Tofel, due to his participation in the negotiations that led to the execution of the challenged Release, "ought to be called as a witness" on plaintiff's behalf at the trial of the issue of the validity of the Release and, thus, should be disqualified as counsel. The Court agrees. Because the Court finds that Robert Tofel, of counsel to Fine, Tofel & Saxl, participated in the negotiations that culminated in the execution of the Release and therefore possesses knowledge crucial to a determination of whether the Release was executed under circumstances constituting economic duress,[2] he is, in fact, a witness who "ought to testify" within the purview of the rule.[3]

■ The American Bar Association's Code of Professional Responsibility has been adopted by the New York State Bar Association and has been recognized as providing appropriate guidelines for the professional conduct of New York lawyers. *W. T. Grant Co. v. Haines,* 531 F.2d 671, 674 (2d Cir. 1976); *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1386 (2d Cir. 1976); *Hull v. Celanese,* 513 F.2d 568, 571 n. 12 (2d Cir. 1975). Accordingly, the Court has the inherent power to ensure compliance with these standards. *See, e. g., General Motors*

---

1. Technically, defendant's motion invokes Canon 9 of the Code of Professional Responsibility, which reads simply:

   A lawyer should avoid even the appearance of professional impropriety.

   However, because Canon 9 is not to be used "promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules," *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1295 (2d Cir. 1975), this Court must measure counsel's conduct in light of D.R. 5–102.

2. Plaintiff presents the Court with no alternative to Tofel's testimony on this issue. The only suggestion, that Tofel will not be called to testify on the direct case but will be reserved for rebuttal, is unsatisfactory.

3. In fact, plaintiff does not seriously contest Mr. Tofel's value as a witness. In an affidavit

in opposition to the instant motion it is admitted that,

Throughout the discussions which culminated in the execution of the waiver, Sheldon was represented by Mr. Tofel; who together with defendant's counsel, Don DeRenzo, Esq., now a Florida attorney and Charles Miller, Esq., a member of the firm of Marshall, Bratter, Greene, Allison & Tucker, Esqs. and the respective principals of the parties to this action, are the only people fully acquainted with the circumstances and discussions culminating in the final form of the waiver, and the circumstances surrounding its execution. It is the fear of the consequences of Mr. Tofel's testimony . . . which has prompted the defendant to make the instant application.

Affidavit of Joel A. Reiss, November 12, 1976 ¶ 6.

*Corp. v. City of New York,* 501 F.2d 639, 643 n. 11 (2d Cir. 1974). But, in spite of the recitation in the Preliminary Statement of the Code that "[t]he Disciplinary Rules . . . are mandatory in character" and "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action," a court may not apply the Rules mechanically in disposing of motions to disqualify counsel. The court's task is to examine for itself the ends sought to be furthered by the Code provisions invoked, together with the question whether disqualification in the case before it would further those ends. *W. T. Grant Co. v. Haines,* 531 F.2d at 676; *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1293 (2d Cir. 1975). With this in mind, the Court turns to the particular Code provisions involved herein.

If Fine, Tofel & Saxl were permitted to continue as plaintiff's counsel, the Court would be sanctioning conduct in direct contravention of a Disciplinary Rule of the ABA Code of Professional Responsibility (D.R. 5–102(A)). This Rule is amply supported by its underlying rationale. To the extent that a client's case is proffered through testimony of its advocate, it is presented through testimony of an interested witness who will be subject to impeachment on that account. The lawyer will also be put in the indelicate position of arguing his own credibility or that of an attorney in his firm. The situation may even arise where this practice will handicap opposing counsel in challenging the credibility of the lawyer-witness. ABA Comm. on Professional Ethics, Opinions, No. 339, p. 3 (1975); *International Electronics Corp. v. Flanzer,* 527 F.2d 1288 (2d Cir. 1975).[4] These considerations have led the ABA Committee on Professional Ethics to conclude that "a client's cause is best served by having the testimony from the witness not subject to impeachment for interest in the outcome of the trial. . . . Accordingly, the Code generally requires that a lawyer who ought to be a witness for the client should fulfill that function and should not diminish the value of his prospective testimony by also being the client's trial advocate." ABA Comm. on Professional Ethics, Opinions, No. 339, pp. 3–4 (1975).

Aside from the likelihood of actual prejudice, as described above, the Court must be mindful of the possibility that testimony by an attorney in the case may lead the public to think "that lawyers may as witnesses distort the truth," thereby diminishing the public's respect for and confidence in the profession. 6 *Wigmore on Evidence* § 1911, at 597 (3d ed. 1940). Where doubt may becloud the public's view of the ethics of the legal profession and thus impugn the integrity of the judicial process, it is the responsibility of the court to ensure that the standards of ethics remain high. *United States v. Armedo-Sarmiento,* 524 F.2d 591, 592–93 (2d Cir. 1975); *Hull v. Celanese Corp.,* 513 F.2d 568, 572 (2d Cir. 1975); *General Motors Corp. v. City of New York,* 501 F.2d 639, 649 (2d Cir. 1974); *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 565, 570–71, 575 (2d Cir. 1973).[5]

---

**4.** As stated by the Second Circuit:

in searching for the rationale of the Rule, we must consider the ethical consideration which underlies it. The arguments for disqualification of the attorney from acting as trial counsel when he, himself, is to be a material witness have been variously stated. See 6 *Wigmore on Evidence* § 1911 (3d ed. 1940). The ultimate justification for the disqualification rule, in Wigmore's view, was that the public might think that the lawyer is distorting the truth for the sake of his client. Another argument for disqualification is that the lawyer-witness will vouch for his own credibility in summing up to the jury—a powerful means of support for his own credibility. The argument that such tactic is to the detriment of his client obviously defeats itself. But the argument that it is unfair to the opponent has some merit. It is difficult, indeed, to cross-examine a witness who is also an adversary *counsel* concerning matters of fact, and, more particularly, on matters impeaching his credibility, within the bounds of propriety and courtesy owed to professional colleagues.

*International Electronics Corp. v. Flanzer,* 527 F.2d at 1294.

**5.** The Court notes with dismay the statement made by counsel that, "[i]n the event the court finds that . . . Fine, Tofel & Saxl may not be trial counsel if Mr. Tofel testifies, plaintiff will not call Mr. Tofel as a witness." Affidavit

In a non-jury case this is perhaps the most compelling reason for disqualification.

Plaintiff contends that, although Tofel "ought to be called as a witness," his firm should not be subject to disqualification in that this "would work a substantial hardship . . . because of the distinctive value" of Fine, Tofel & Saxl as counsel in this case. ABA Code of Professional Responsibility, Disciplinary Rule 5–101(B)(4).[6] In support of this contention plaintiff cites a ten-year history of representation by this particular law firm and the approximately 450 hours of time expended in connection with the multitude of claims that comprise plaintiff's case, while making only a conclusory allegation that the issue of economic duress is so intertwined with the substantive claims that an intimate knowledge of the latter is necessary for a proper presentation of the former. Yet, aside from these general statements, the record is devoid of any indication of Fine, Tofel & Saxl's particular value to plaintiff on the issue of the validity of the Release, and the Court finds that the evidence before it is insufficient to allow the firm to continue representation under the exception delineated by D.R. 5–101(B)(4).

■ Finally, plaintiff argues that this motion should be denied because of Blackhawk's laches in waiting until the day of trial before the Magistrate to make the motion. This delay, however, was the result of extensive settlement negotiations between the parties and caused no prejudice to plaintiff other than a delay of trial on the limited issue discussed above. Moreover, insofar as "disqualification is in the public interest, the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify the continuance of a breach of the Code of Professional Responsibility." *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 574 (2d Cir. 1973).

## CONCLUSION

The Court takes this opportunity to note with concern the increasingly popular use of a motion to disqualify opposing counsel as a device to delay the progress of pending litigation. Nonetheless, under the circumstances here present, the Court is constrained to grant the motion and require withdrawal of Fine, Tofel & Saxl as counsel for plaintiff during the trial concerning the validity of the Release. The case is hereby referred to Magistrate Gershon for this purpose.

SO ORDERED.

---

of Joel Reiss, dated November 12, 1975 ¶ 3. This statement shows not only a misunderstanding of the import of D.R. 5–102, but an ignorance of other ethical considerations as well. This Court's conclusion that Fine, Tofel & Saxl should withdraw is correctly based on the finding that Mr. Tofel *ought* to be called as a witness, not that he *will* be called as a witness. *Foley v. Vanderbilt,* 523 F.2d 1357, 1359 (2d Cir. 1973). Counsel's rather cavalier suggestion might eliminate the appearance of or opportunity for impropriety sought to be avoided by D.R. 5–102, *see International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1293–94 (2d Cir. 1975). Because Tofel ought to be called as a witness, however, the failure of his firm to do so will likely result in ineffective assistance of counsel for his client. Such a result will not be tolerated.

**6.** Disciplinary Rule 5–102 makes the exceptions of D.R. 5–101 applicable to a situation such as the one presently before the Court. In spite of a violation of D.R. 5–102,

> [an attorney] or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

> DR 5–101 Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

> .    .    .    .    .

> (B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

> .    .    .    .    .

> (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.