Sophie **BOTTARO** and Frank Bottaro, et al., Plaintiffs,

v.

**HATTON ASSOCIATES, et al., Defendants.**

**No. 80 CV 1298.**

United States District Court, E. D. New York.

Dec. 30, 1981.

Bressler, Lipsitz & Rothenberg, New York City by David J. Olesker, New York City, for plaintiffs; Finkelstein, Thompson & Levenson by Douglas G. Thompson, Jr., John F. McCarthy III and Susan B. Bovee, Washington, D.C., of counsel.

Stern, Fixler & Wiener by Joel S. Stern, New York City, for defendants Hatton Associates, Lanni Mining Enterprises, Inc., Richard Guthrie and Morris P. Silver.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This is a securities fraud action based on plaintiffs' purchase of limited partnership interests in defendant Hatton Associates. The details of the action are not pertinent to the instant motion, but the gravamen of the complaint is that, based on misrepresentations in offering documents that Hatton Associates owned an operating coal mine in Kentucky, defendants fraudulently induced plaintiffs to purchase interests in the venture.

Defendants have moved to disqualify plaintiffs' law firm, Finkelstein, Thompson & Levenson, of Washington, D.C., on the grounds that the representation violates Disciplinary Rule 5–102(A) of the American Bar Association Code of Professional Responsibility, which states:

> "(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial . . . . "

The significant undisputed facts are that this action was commenced by Finkelstein, Thompson & Levenson (F,T&L) on behalf of plaintiffs in 1979, and that plaintiff Alfred P. Bergner, Esq., presently a partner in the firm, became of counsel to F,T&L in January 1980. Bergner has deposed that at some point subsequent to his association with F,T&L he had a conversation with defendant Morris P. Silver, president of defendant Lanni Mining Enterprises, which is one of the general partners of the Kentucky limited partnership. Bergner testified that in this conversation Silver indicated that certain defendants present at the closing of the securities sale had knowledge that the coal mining operations had ceased at that time.[1] Part of plaintiffs' fraud claim is based on the alleged misrepresentation that the mine was functioning, and Silver denies having made the alleged admission.

In sum, Bergner is (1) a plaintiff, (2) a partner in plaintiffs' law firm, and (3) a potential witness for plaintiffs who can offer testimony, subject to credibility attack, as to defendants' scienter. The primary issue before the Court is whether Bergner "ought to be called as a witness," DR 5–102(A), on behalf of plaintiffs. If so, the Code clearly mandates that F,T&L discontinue representation of plaintiffs in the trial unless the latter would incur "substantial hardship" therefrom. DR 5–101(B).

 At the outset, the Court notes that it has "not only the supervisory power but also the duty and responsibility to disqualify counsel for unethical conduct," *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d

---

1. The relevant deposition testimony follows:

 "My source of knowledge . . . is from Morris Silver who indicated subsequent to closing when the investigation began that all parties who were present at the closing knew that there was no mining going on at that time.
 "By Mr. Sanger:
 "Q. You are saying that *Morris Silver* made that statement to you?
 "A. Yes.
 "Q. When did Morris Silver make that statement to you?
 "A. I can't give you an exact date but we had numerous telephone conversations after the closing over a long period of time.
 "Q. Did you make any notes of that telephone conversation?
 "A. No.
 "Q. Was anybody else present or on the line during that telephone conversation?
 "A. No.
 "Q. Do you have any records that indicate what date the telephone conversation took place?
 "A. To the best of my recollection, probably early 1980. *My conversation with Morris was not on the subject of Hatton but on other matters and he volunteered information about Hatton.*
 "Q. That would have been after this lawsuit was filed?
 "A. Yes."
 Bergner Dep. at 108–09.

268, 271 (2d Cir. 1975). The Court's responsibility in disqualification controversies "is discretionary in nature;" however, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).

Most significantly, a close examination of the particular facts at hand is appropriate. In resolving disqualification controversies we must neither take "a broadbrush approach," *id.*, nor apply the Code in dogmatic fashion without regard to "our constitutional function of regulating the Bar . . . in the interests of justice to all concerned." *J.P. Foley & Co. v. Vanderbilt*, 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J., concurring).

The decisive issue turns not on whether Bergner *will* be called as a witness at trial, but on whether he "ought" to be called. *Id.* at 1359. As Judge Sofaer has aptly stated, "[t]he test is whether the attorney's testimony could be significantly useful to his client; if so, then he ought to be called." *MacArthur v. Bank of New York*, 524 F.Supp. 1205 (S.D.N.Y.1981). As defendants point out, Bergner "ought" to testify not only to establish his own reliance on the offering documents, but also to proffer evidence of the scienter element of plaintiffs' fraud claim.

Plaintiffs argue that the material misrepresentations at the basis of their claim will be proved by documentary evidence and other witnesses. They further argue that Bergner's testimony as to scienter will be relevant only to their section 10(b) claim and not to the remainder of the complaint. Certainly the conflict of interest would be harmless if the testimony would be merely cumulative and not critical to plaintiffs' case:

> "It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue." ABA Code of Prof. Responsibility, EC 5–10.

Yet plaintiffs fail to indicate that Bergner's testimony is so peripheral that he is not a necessary witness. As EC 5–10 indicates, the significant consideration is the likelihood of utilizing the testimony. There has been no showing that alternative evidence diminishes the materiality, if not necessity, of the testimony in question. Moreover, where the choice is between testifying and representing the client,

> "'doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate.' EC 5–10. A party can be represented by other attorneys, but cannot obtain substitute testimony for a counsel's relevant, personal knowledge." *MacArthur v. Bank of New York, supra.*

F,T&L argues that consent of each of the plaintiffs, after disclosure of the conflict of interest, to their continued representation effectively waives the intended protection of DR 5–102(A). There is no question that plaintiffs' right to freely choose counsel is of paramount importance. "[T]he interests of justice . . . involve not only the ethics of the lawyer but also the rights of his client . . . ." *J.P. Foley & Co. v. Vanderbilt, supra*, at 1360 (Gurfein, J., concurring). Nevertheless, a balance must be achieved between the client's rights and "the need to maintain the highest ethical standards of professional responsibility." *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 565 (2d Cir. 1973).

In the instant case, plaintiffs' trial advocate will be placed in the objectionable position of arguing the credibility of an attorney in his firm.

> "[T]he Court must be mindful of the possibility that testimony by an attorney in the case may lead the public to think 'that lawyers may as witnesses distort the truth,' thereby diminishing the public's respect for and confidence in the profession. 6 Wigmore on Evidence § 1911, at 597 (3d ed. 1940). Where doubt may becloud the public's view of the ethics of the legal profession and thus impugn the integrity of the judicial process, it is the responsibility of the court to ensure that the standards of ethics remain high." *U.S. ex rel. Sheldon Electric Co. v. Black-*

*hawk Heating & Plumbing Co.*, 423 F.Supp. 486, 489 (S.D.N.Y.1976).

In the circumstances, the need for maintaining the ethical integrity of the Bar outweighs the plaintiffs' representational considerations.

Finally, plaintiffs contend that the following exception to DR 5–102(A) prevents operation of the withdrawal requirement:

> "[E]xcept that he may undertake the employment and he or a lawyer in his firm may testify:
>
> \* \* \* \* \* \*
>
> "(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." ABA Code of Prof. Responsibility, DR 5–101(B)(4).

Although withdrawal of the firm at this point in the litigation may work substantial hardship on plaintiffs, hardship alone is insufficient; it must derive from the "distinctive value" of the retained counsel. Yet plaintiffs support their contention solely with general assertions of the firm's expertise in securities fraud and its involvement in the suit since its inception. Nothing in the record suggests that the issues to be litigated are so complex or the facts underlying the claim so unique that another firm could not competently represent plaintiffs in the action. Moreover, F,T&L may consult with substitute counsel to prevent duplication of effort in preparation for trial.

Accordingly, since Bergner ought to be called as a witness, plaintiffs' present counsel has no unique value, and the interest in maintaining the ethical standards of the Bar outweigh, in the instant circumstances, plaintiffs' right to freely choose counsel, defendants' motion to disqualify F,T&L from representing plaintiffs in the trial of this action is granted.

SO ORDERED.