Hermine HANLIN, Plaintiff-Appellant,

v.

Marvin M. MITCHELSON,
Defendant-Appellee.

No. 958, Docket 85-9046.

United States Court of Appeals,
Second Circuit.

Argued March 24, 1986.

Decided July 9, 1986.

Hermine Hanlin, pro se.

Bernard E. Clair, New York City (Cathy M. Hartmann, Clair & Daniele, New York City, of counsel), for appellee.

Before MANSFIELD, TIMBERS and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Hermine Hanlin, *pro se*, appeals from a judgment of the United States District Court for the Southern District of New York, 623 F.Supp. 452 (1985), Leisure, *J.*, denying Hanlin's motions to amend her legal malpractice complaint and to compel further discovery and granting appellee Marvin Mitchelson's motion for summary judgment dismissing Hanlin's complaint.

We affirm in part, reverse in part and remand for further proceedings.

## BACKGROUND

In December 1976, Hermine Hanlin entered into a written partnership agreement with the four members of a singing group called "The Manhattans." The agreement provided not only that she would be an equal business partner with the four group members, but also that she would serve as the group's manager. Thus, in addition to receiving a share in the partnership's profits, Hanlin was also to receive a commission on the group's personal appearances and a percentage of the proceeds from its music publishing activities.

In 1981, shortly after the Manhattans received a Grammy award, there was a falling out between Hanlin and the group. Pursuant to a clause in the partnership agreement, the dispute went to arbitration in accordance with the arbitration laws of the State of New York. Hanlin retained California attorney Marvin Mitchelson to represent her in the arbitration proceedings. According to Hanlin, she entered into a verbal agreement with Mitchelson which required her to pay a flat fee of $25,000 in advance, plus expenses, and obligated him to handle the case "as far as it

has to go." App. of Appellee at 5. She paid him the $25,000 fee.

During hearings before a three member panel of the American Arbitration Association, the Manhattans' attorney questioned Hanlin about her withdrawal of $26,700 from a joint account she shared with Manhattans group member Kenneth Kelley. Hanlin had not previously informed Mitchelson of this withdrawal; he first learned of it during the arbitration hearings. In a subsequent affidavit, Mitchelson stated that he initially decided to "'steer away' from the shoals of this potentially devastating testimony" for fear that the withdrawal would be considered a breach of Hanlin's fiduciary duty to the Manhattans and would harm her case against them. App. of Appellee at 305. When Kelley asserted a formal counterclaim for the $26,700, however, Mitchelson urged the arbitrators to treat the counterclaim as beyond the proper scope of the arbitration.

The arbitral award, issued on December 23, 1982, directed the Manhattans to pay Hanlin $20,620 and directed Hanlin to pay Kelley $26,750. The award also declared that Hanlin had percentage interests in certain Manhattans contracts and directed the parties to execute assignments in connection with those interests. According to Hanlin, these assignments were never executed and the award to her was never confirmed.

Hanlin was unhappy with the arbitral award and urged Mitchelson to appeal it and to persuade the arbitral panel to correct alleged errors. Mitchelson did obtain a "Clarification of Award," issued by the panel on February 18, 1983, which explained an apparent discrepancy between the award and one of the assignments.

Hanlin, still dissatisfied, continued to urge Mitchelson by telephone, mail and telegraph to appeal. Not satisfied with his response, she wrote to him on March 28, 1983, asking that he return the $25,000 fee she had paid. A lawyer in Mitchelson's Los Angeles office responded by letter on March 30, 1983, refusing to make any refund, stating that the arbitration award was "final and ... not appealable," and offering "to assist any counsel you may choose with a legal case history or any other service which I can reasonably provide" if Hanlin wished to sue any of the individual defendants in New York. App. of Appellee at 29. Hanlin responded by letter on April 6, 1983, asking for further advice about obtaining performance of the arbitral award without mentioning her earlier request for a refund.

Mitchelson himself wrote to Hanlin on April 21, 1983, saying that he had been unable to answer her letters because he had been involved in an automobile accident and had just been released from the hospital. Mitchelson reiterated that the arbitration was "binding" and explained why the award to Kelley might have been within the scope of the arbitration. Id. at 32–33. He then offered to seek to reopen the arbitration, but added "I cannot act for you if you are going to be hostile and keep asking me to return fees to you." Mitchelson stated that Hanlin was not entitled to a fee refund, noting also that Hanlin owed his office $6,500 in "costs" for the arbitration. Id.

On May 24, 1983, New York attorney Neal Rosenberg wrote to Mitchelson stating that he had "been retained by Ms. Hanlin in reference to the enclosed correspondence." Id. at 34. The "correspondence" was apparently the series of letters described above in which Hanlin had urged an appeal and Mitchelson had declined to pursue one. Rosenberg disagreed with Mitchelson's assessment that the arbitral award could not have been appealed. He stated, however, that the deadline had passed for seeking an order to vacate or modify the award and asked Mitchelson to "advise us as to how you intend to resolve this matter." Id. at 34–36. On June 21, 1983, an attorney in Mitchelson's office responded to Rosenberg, defending Mitchelson's "good faith opinion" that no appeal to the arbitral panel had been warranted and asserting that "any other relief," presumably including an appeal to a court, was

beyond the scope of Mitchelson's representation of Hanlin. *Id.* at 37–40.

On April 6, 1984, Hanlin filed the instant diversity action against Mitchelson in the district court seeking compensatory and punitive damages for "intimidation," negligence, defamation and malpractice. Mitchelson counterclaimed for the $6,500 in costs and expenses allegedly owed to him by Hanlin. He then filed a single motion seeking either dismissal of the complaint under Fed.R.Civ.P. 12(b)(6) or summary judgment under Fed.R.Civ.P. 56.

In a memo endorsement issued August 23, 1984, Judge Edelstein, to whom the case was originally assigned, dismissed Hanlin's claims for intimidation and defamation, apparently pursuant to Rule 12(b)(6). Then, treating the negligence and malpractice claims together, he granted partial summary judgment to Mitchelson, preserving only Hanlin's claim that Mitchelson had improperly failed to object to the arbitral panel's consideration of the $26,700 Kelley counterclaim.

Subsequent to this ruling, Hanlin obtained some discovery. When Hanlin's deposition of Mitchelson was aborted by Mitchelson's attorney, Hanlin moved the district court for an order compelling a continuation of the deposition. Mitchelson cross-moved for summary judgment on the remainder of Hanlin's complaint. Hanlin then moved for leave to amend her complaint to add claims under contract and negligence theories based on Mitchelson's alleged failure to confirm the arbitral award within the one year limitations period.

In an opinion by Judge Leisure, to whom the case had been reassigned, the court denied Hanlin's motion to compel discovery, denied leave to amend and granted summary judgment to Mitchelson, dismissing Hanlin's complaint. Hanlin appeals from the judgment entered December 12, 1985.

## DISCUSSION

Before reaching the merits, we must deal with two threshold jurisdictional issues.

■ On the face of the record transmitted to us, it appeared that we lacked appellate jurisdiction over this case because the dismissal of Hanlin's complaint left Mitchelson's counterclaim for $6,500 still pending against her. There had been no Fed.R. Civ.P. 54(b) certification by the district court explaining why its partial resolution of the case should be treated as final and, therefore, the dismissal was not an appealable final judgment. *See In re Martin-Trigona,* 763 F.2d 135, 139 (2d Cir.1985); *Ansam Associates, Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 445–46 (2d Cir.1985).

■ The failure of a record to disclose a basis for appellate jurisdiction can, however, be cured. *In re Martin-Trigona,* 763 F.2d at 138. Such a cure has been effected here.

When we raised the question of appealability at oral argument, Mitchelson's counsel informed us that Mitchelson's counterclaim had been withdrawn. He then corrected himself, stating that, in fact, no withdrawal papers had ever been filed, even though Hanlin had been told approximately six months prior to oral argument that the counterclaim was being withdrawn. Counsel attributed the failure to file to an "oversight" in his office.

Counsel told us that he was "now" withdrawing the counterclaim and promised to take immediate formal steps to accomplish the withdrawal. In a letter to the Court the following day, counsel advised that he was contacting the district court to formalize the withdrawal. The withdrawal was finally docketed in the district court on April 11, 1986. Under these circumstances, in order to avoid unnecessary prejudice to the *pro se* plaintiff-appellant from counsel's oversight, we deem the jurisdictional defect cured. *Cf. Leonhard v. United States,* 633 F.2d 599, 609, 611 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

■ The second jurisdictional issue involves the scope of our review. Mitchelson argues that the failure of Hanlin to mention Judge Edelstein's memo endorsement

in her notice of appeal prevents us from reviewing claims dismissed by Judge Edelstein. This argument is without merit.

As we have just explained, an order disposing of only a portion of a case is ordinarily not appealable absent a Rule 54(b) certification. Because of the policy against piecemeal appeals, such certifications are rarely granted. *See Ansam Associates*, 760 F.2d at 445. Hanlin's notice of appeal referred to the final judgment entered against her on December 12, 1985, and to Judge Leisure's opinion, which, in turn, referred to and relied on the memo endorsement of Judge Edelstein. Hanlin's brief on appeal plainly takes issue with the decisions of both judges below. Where, as here, we have no reason to think that a *pro se* appellant's notice of appeal has prejudiced or misled the appellee, we will read the notice broadly. *See Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962). Accordingly, we will review both of the decisions appealed from here. *See Villante v. Department of Corrections*, 786 F.2d 516, 517–18 (2d Cir.1986) (*pro se* appeal from final judgment encompassed two orders on which judgment was based).

We now turn to the merits. Hanlin challenges the district court's grant of summary judgment on her negligence and malpractice claims and its denial of her motions for leave to amend her complaint and to compel discovery.

## 1. *Dismissal of Malpractice Claims*

The elements of a legal malpractice claim in New York are the existence of an attorney-client relationship, negligence on the part of the attorney or some other conduct in breach of that relationship, proof that the attorney's conduct was the proximate cause of injury to the plaintiff, and proof that but for the alleged malpractice the plaintiff would have been successful in the underlying action. *Fidler v. Sullivan*, 93 A.D.2d 964, 463 N.Y.S.2d 279, 280 (3rd Dep't 1983); *N.A. Kerson Co. v. Shayne, Dachs, Weiss, Kolbrenner, Levy and Moe Levine*, 59 A.D.2d 551, 397 N.Y.S.2d 142,

144 (2nd Dep't 1977) (Suozzi, *J.*, concurring), *aff'd*, 45 N.Y.2d 839, 408 N.Y.S.2d 475, 476, 381 N.E.2d 630, 631 (1978) (affirming for reasons stated in concurrence of Suozzi, *J.*) (noting absence of evidence that step not taken by attorney "would have altered the result" of underlying action); *see Freschi v. Grand Coal Venture*, 564 F.Supp. 414, 415 (S.D.N.Y.1983). Because negligence of an attorney is an element of malpractice, we will discuss the claims Hanlin denominated malpractice and negligence together.

■ Judge Edelstein granted partial summary judgment on Hanlin's malpractice claim on two grounds: failure to show any injury and failure to respond properly to Mitchelson's summary judgment motion as required by Fed.R.Civ.P. 56(e). The first of these grounds was not a proper basis for dismissal for the following reasons.

The lack of injury ground was predicated on a finding that Hanlin "recovered at the arbitration hearing *almost* everything she demanded." App. of Appellant at 15 (emphasis added). On its face, this finding does not negate the possibility that but for some negligence on Mitchelson's part, Hanlin would have received complete relief. Furthermore, the extent to which Hanlin's demands were actually satisfied was a disputed fact, as evidenced by Hanlin's repeated requests that Mitchelson seek modification of the award or take an appeal. On a motion for summary judgment, the court's role is to identify such factual disputes, not to decide them as the court did here. *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 9 (2d Cir.1983); *see Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985).

The district court also erred in concluding that Hanlin's response to Mitchelson's summary judgment motion was inadequate. While we recognize that the opponent of summary judgment may not respond to a properly supported motion with "mere conclusory allegations or denials," *Schering Corp.*, 712 F.2d at 9, Hanlin's response to Mitchelson's motion must be evaluated in the light of two other principles as well:

the "critical importance of discovery in the summary judgment context," *id.* at 10, and the liberal construction given to *pro se* pleadings, *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

Here, the motion for summary judgment was filed before Hanlin had obtained discovery. Her response to the motion consisted of two affidavits and a memorandum of law. One of the affidavits included a sworn statement that every fact in the memorandum was true. The memorandum stated as facts that Mitchelson had failed in various ways to prepare Hanlin for the arbitration proceedings, had failed to file an appeal of the arbitral award and had failed to advise Hanlin of the deadline for appeal.

Reading Hanlin's reply papers liberally, and considering the stage at which they were filed, we conclude that they were adequate to withstand the summary judgment motion under Rule 56(e). The papers contained sworn statements of fact, not conclusory allegations. Virtually the only evidence of Mitchelson's alleged inactions that Hanlin could offer at this early stage, beyond the series of letters appended to her complaint, was her own sworn statements. Her failure to offer more should not have been held fatal. *Cf. Villante,* 786 F.2d at 521.

The subsequent grant of summary judgment by Judge Leisure presents a different picture. This decision came after Hanlin had obtained significant discovery including at least a partial deposition of Mitchelson on his response to the Kelley counterclaim. At this later stage of the litigation, summary judgment was more likely to be appropriate than such a grant at the pre-discovery stage. *See Schering Corp.,* 712 F.2d at 10.

■ We agree with Judge Leisure that the Kelley counterclaim was properly within the scope of arbitration and, therefore, that no legal malpractice claim can be based on Mitchelson's failure to persuade the arbitral panel to exclude the counterclaim from consideration. The arbitration

clause in Hanlin's partnership agreement with the Manhattans stated: "It is agreed that disputes arising under this agreement, or under any instrument made to carry out this agreement, shall be submitted to arbitration in accordance with the arbitration laws of the State of New York." The partnership agreement broadly provided that Hanlin was to "function as the 'Managing Partner' with the duties and responsibilities of conducting the business affairs of the partnership."

Hanlin's argument that her withdrawal of $26,700 from the joint account she shared with Kelley was a purely personal matter is belied by her testimony during the arbitration proceedings. Hanlin testified that the Kelley account was opened "probably in [19]77" for the purpose of "making sure that if [the Manhattans] owed me anything I would have it." App. of Appellee at 201, 211. She also testified that she took the disputed money from that account to cover part of the debt allegedly owed to her by Kelley and the Manhattans due to their breach of contract. *Id.* at 210. Thus, the joint account with Kelley was originated and treated by Hanlin as, in the words of the arbitration clause, "an instrument ... to carry out the terms of" the partnership agreement. A dispute concerning such an instrument was explicitly within the scope of the arbitration clause.

Moreover, Hanlin's use of the account to offset a debt owed to her under the partnership agreement clearly implicated her duties, powers and responsibilities as the Manhattans' managing partner. The extent of those duties, powers and responsibilities was controlled by the terms of the partnership agreement. A dispute over Hanlin's proper exercise of those functions was also plainly within the scope of the arbitration clause.

■ In sum, because the dispute over the Kelley counterclaim was properly within the scope of the arbitration clause, Hanlin cannot predicate a malpractice claim on Mitchelson's failure to keep that dispute out of the arbitration proceedings. Hanlin

cannot show that but for Mitchelson's actions or inactions with regard to the counterclaim the award against her would not have been rendered. Therefore, summary judgment was properly granted to Mitchelson on the portion of Hanlin's malpractice claim dealing with the Kelley counterclaim. *N.A. Kerson Co.*, 408 N.Y.S.2d at 476, 381 N.E.2d at 631.

### 2. *Denial of Leave to Amend*

Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." As we recently reiterated, "[t]he Supreme Court has made clear that 'this mandate is to be heeded,' and that leave to amend should be permitted in the absence of an apparent or declared reason, such as undue delay, bad faith, or undue prejudice to the opposing party." *Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau*, 786 F.2d 101, 103 (2d Cir.1986) (quoting *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230).

The district court denied Hanlin's motion for leave to amend her complaint to include claims under contract and negligence theories that she had been injured by Mitchelson's failure to confirm her arbitral award. The decision to deny leave was based on three premises: that Mitchelson's failure to confirm the award in time was known to Hanlin when she filed her original complaint; that Mitchelson would be prejudiced by an amendment after discovery and after the filing of his motion for summary judgment; and that the allegations in the proposed amended complaint were frivolous because Mitchelson's representation of Hanlin had terminated before the alleged failure to confirm the arbitral award occurred. We reject each of these premises and hold that the denial of leave to amend was an abuse of discretion. *See Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230.

Hanlin's original complaint indicates that she had been unable to "collect on the award of the arbitrators," App. of Appellee at 12, but does not indicate why that was so. She explained at oral argument that she thought she had a valid, enforceable award and that she did not understand what was going on when the various other parties to the award refused to honor it. She states that at the time of her complaint she was unaware of the one year statute of limitations for confirmation of the award, *see* N.Y.Civ.Prac.Law § 7510 (McKinney 1980), or indeed of the need for confirmation at all, *see Kavares v. Motor Vehicle Accident Indemnification Corp.*, 29 A.D.2d 68, 285 N.Y.S.2d 983, 988 (1st Dep't 1967) (confirmation necessary to "finalize" arbitral award), *aff'd mem. sub nom. McEntee v. Motor Vehicle Accident Indemnification Corp.*, 28 N.Y.2d 939, 323 N.Y.S.2d 431, 271 N.E.2d 915 (1971); *Mossman v. Motor Vehicle Accident Indemnification Corp.*, 19 A.D.2d 842, 244 N.Y.S.2d 565, 566 (2nd Dep't 1963) (confirmation finalizes arbitration award, so confirmation motion is "integral part of the arbitration procedure"); N.Y.Civ.Prac.Law § 7514(a) (McKinney 1980) ("judgment shall be entered *upon the confirmation of an award*") (emphasis added); *see generally* J. McLaughlin, Practice Commentary, 7B McKinney's Consolidated Laws of New York Annotated §§ 7510, 7514 at 555–56, 651 (1980); *id.* at § 215, subd. 5 at 483 (1980 & Supp.1986). *But see Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984).

*Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698 (2d Cir.1985), the only case relied on by the district court on this point, does not bar Hanlin's amendment. We stated in *Smiga* that an amendment enables a party " 'to assert matters that were overlooked or were unknown ... at the time ... [of the] original complaint or answer.' " *Id.* at 703 (quoting 6 C. Wright and A. Miller, Federal Practice and Procedure § 1473 (1971)). The full passage quoted from Wright and Miller refers to "matters ... unknown *to him.*" 6 Wright and Miller § 1473 at 375 (emphasis added). Thus, in *Smiga*, we refused to permit an amendment designed to rescind the district court's jurisdiction over a matter on which it had already acted and about which the

moving party clearly had knowledge. On the other hand, however, amendments seeking to insert or correct matters about which parties should have known but did not know are plainly within the scope of Rule 15(a). *See generally* 6 Wright and Miller § 1474 (listing examples of amendments permitted under Rule 15(a)).

To prevent Hanlin from amending her complaint based on what she should have known would add insult to the injury she alleges she suffered at the hands of her attorney. Rule 15(a) does not require so harsh a result. Hanlin alleges that she did not know about the deadline for confirmation because Mitchelson failed to tell her.

This case is also distinguishable from *Ansam Associates, Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442 (2d Cir.1985), the case relied on by the district court for the proposition that leave to amend should not be granted after discovery has been completed and a motion for summary judgment has been filed. In *Ansam Associates,* the party was seeking to amend a complaint to assert new claims concerning a different period of time, derived from a different statute and alleging an entirely new set of operative facts of which the original complaint did not give fair notice. 760 F.2d at 446. Here, the new claims are merely variations on the original theme of malpractice, arising from the same set of operative facts as the original complaint. Moreover, both the contract and negligence theories set forth in the proposed amended complaint were forecast by the original malpractice allegations.

As we have stated, Hanlin's original complaint alleged that she had hired Mitchelson for a flat fee and that he had promised that the sum would "cover 'the case as far as it has to go.'" App. of Appellee at 5. The complaint then alleged, essentially, that Mitchelson had failed to deliver the promised performance and that, as a result, Hanlin had lost her right to appeal and was unable to collect on the arbitral award. Thus, the complaint, liberally construed, set out a claim for breach of contract, *see Saveca v. Reilly,* 111 A.D.2d 493, 488 N.Y. S.2d 876, 878 (3rd Dep't 1985), with Hanlin's inability to collect on the arbitral award as one element of damages. Mitchelson was on notice of such a claim.

Similarly, the original complaint claimed that Hanlin's inability to collect on the arbitral award was due to Mitchelson's negligence. That allegation was sufficient to put Mitchelson on notice of a claim that any of his various actions or inactions on Hanlin's behalf had prevented her from collecting. The most obvious of these, to an attorney defendant if not to a *pro se* plaintiff, would seem to be a failure to confirm the arbitral award. We disagree, therefore, with the district court's conclusion that Mitchelson will be unduly prejudiced by the amendment of Hanlin's complaint.

The district court's third basis for denying leave to amend was that Hanlin's amended claims would be frivolous because the failure to confirm the award occurred after Hanlin had terminated Mitchelson's representation. We reject this notion for the following reasons.

It is not altogether clear that the attorney-client relationship between Hanlin and Mitchelson had terminated. The exchange of letters between Hanlin and Mitchelson's office certainly suggests that the relationship was strained. However, the letters, taken together, do not indicate conclusively that the relationship was at an end.

For example, when Hanlin demanded on March 28, 1983, that Mitchelson refund her fee, Mitchelson's office responded not be declaring the representation over but by justifying the fee and offering to assist New York counsel in preparing for suits against the individual Manhattans. Thereafter, on April 6, Hanlin wrote to Mitchelson again asking for legal advice, apparently still viewing him as her lawyer. Mitchelson responded on April 21, warning Hanlin about her "hostile" activity toward him but nevertheless offering to seek a reopening of the arbitration for her. The clear implication of the April 21 letter is that on that date Mitchelson, too, saw his attorney-client relationship with Hanlin as still in-

tact. Even when Attorney Rosenberg wrote to Mitchelson stating that he had been retained by Hanlin at least as to the matter of the appeal, the response from Mitchelson's office, in addition to raising questions about the scope of Mitchelson's representation, not only defended past acts but also sought current information about Hanlin's arbitration-related activities, apparently recognizing some continued responsibility.

"As between attorney and client, no special formality is required to effect the discharge of the attorney. 'Any act of the client indicating an unmistakable purpose to sever relations is enough.'" *Costello v. Bruskin*, 58 A.D.2d 573, 395 N.Y.S.2d 116, 117 (2nd Dep't 1977) (quoting 3 N.Y.Jur., Attorney and Client, § 5). A client's malpractice suit against an attorney is enough to indicate that the client has terminated the relationship. *Id.* at 116; *see also Lazzaro v. Kelly*, 87 A.D.2d 975, 450 N.Y.S.2d 102, 104 (4th Dep't 1982). Short of instituting a malpractice suit, however, a client may question her attorney's tactics, suggest alternatives and even consult another attorney without automatically terminating the attorney-client relationship. *See Bucaro v. Keegan, Keegan, Hecker & Tully, P.C.*, 123 Misc.2d 590, 483 N.Y.S.2d 564, 567–68 (Sup.Ct.1984). We have refused to find a termination even when the plaintiff and her newly retained attorney directly asked the first attorney to withdraw from the case. *Gonzalez y Barredo v. Schenck*, 428 F.2d 971, 974, 977–78 (2d Cir.1970).

We conclude that the status and scope of the attorney-client relationship here prior to the commencement of the instant suit are unresolved questions of fact. The termination of the relationship was not so clear as to render Hanlin's proposed amendment frivolous and, therefore, no proper basis appears for denying leave to amend.

Furthermore, even if the letter from Attorney Rosenberg did terminate the attorney-client relationship between Hanlin and Mitchelson, the fact of termination would not end the malpractice inquiry. Questions would still remain about Mitchelson's handling of the termination.

Ordinarily, for example, a withdrawing attorney must give a client "clear and unambiguous" notice of the attorney's intent to withdraw from representation. *Bucaro*, 483 N.Y.S.2d at 567. There is no indication on the record that such notice was ever given to Hanlin. Beyond this notice requirement, the Code of Professional Responsibility imposes a broader duty. The Code plainly states that "a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of the client." N.Y. Jud.Law (App.) Code of Prof.Resp. DR 2–110(A)(2) (McKinney Supp.1986). *See also id.* at EC 2–32 ("Even when withdrawal is justifiable, a lawyer should protect the welfare of the client ... endeavoring to minimize the possibility of harm."). Whether Mitchelson fulfilled these duties is another open question on this record. In any event, the termination of the attorney-client relationship here, if it occurred, did not necessarily bar the malpractice suit. Standing alone, termination would thus not be enough to render the proposed amendment frivolous or to justify the denial of leave to amend Hanlin's complaint.

### 3. *Denial of Motion to Compel Discovery*

Our resolution of the Kelley claim above has mooted Hanlin's motion to compel continuation of a deposition on that subject. However, our resolution of the other issues in this case requires a remand in which further discovery is likely to be appropriate. The scope of such discovery is a matter we leave to the sound discretion of the district court.

### CONCLUSION

We affirm the district court's dismissal of Hanlin's claims of "intimidation" and defamation and its grant of summary judgment as to that portion of her malpractice claim relating to the Kelley arbitration award. We reverse the grant of summary judgment on the remainder of Hanlin's

negligence and malpractice claims and the denial of leave to amend her complaint. This case is remanded for further proceedings consistent with this opinion.

The parties shall bear their own costs.