**ARIES VENTURES LIMITED and Raymond T. Mundy, Plaintiffs,**

v.

**AXA FINANCE S.A. and Oliver Roussel, Defendants.**

**No. 86 Civ. 4442 (WCC).**

United States District Court, S.D. New York.

Oct. 12, 1988.

Krashes, Ross, Gess and Brown, Spring Valley, N.Y. (Donald J. Ross, of counsel), for plaintiffs.

Golenbock, Eiseman, Assor, Bell & Perlmutter, New York City (Jeffrey T. Golenbock, of counsel), for defendants.

OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

In this diversity action, plaintiff Mundy alleges that he performed services for defendants for which he was not paid and made loans to defendants which have not been repaid. Magistrate Kathleen A. Roberts supervised discovery, which was completed on or about March 31, 1988. At the close of discovery, plaintiffs requested permission to file an amended complaint pursuant to Rule 15(a), Fed.R.Civ.P., adding seven new claims and two new defendants, Acor Capital Corporation ("Acor") and Axa Capital Corporation ("Axa"). Noting that the addition of Acor and Axa would destroy diversity jurisdiction and force the Court to remand the case to the state court from which it was originally removed, Magis-

trate Roberts denied plaintiffs' request to add the new defendants but allowed plaintiffs to add the new claims. Plaintiffs now move to modify the Order of Magistrate Roberts, dated August 10, 1988. After a careful review of plaintiff's motion to modify Magistrate Roberts' Order, the motion is denied in its entirety.

## DISCUSSION

Magistrates are empowered by statute to preside over pretrial matters upon being appointed by a district judge. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Both the statute and the rule command that a non-dispositive magistrate's order shall be set aside by a district judge only if "clearly erroneous or contrary to law." The Second Circuit has consistently applied this standard to afford magistrates broad discretion. *Stonewall Insurance Co. v. National Gypsum Co.*, No. 86–9671, slip op. at 3 (S.D.N.Y. Sept. 6, 1988) [available on WESTLAW, 1988 WL 96159]; *Empire Volkswagen v. World–Wide Volkswagen*, 95 F.R.D. 398, 399 (S.D.N.Y.1982); *Citicorp. v. Interbank Card Ass'n*, 478 F.Supp. 756, 765 (S.D.N.Y.1979). Thus, Magistrate Roberts' decision is entitled to a large measure of deference as a matter of law.

Furthermore, a careful analysis of Magistrate Roberts' Order reveals no "clear error." It is well-established that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Hanlin v. Mitchelson*, 794 F.2d 834, 840 (2nd Cir.1986). However, where amendment of the complaint would defeat diversity jurisdiction, leave to amend should not be given as freely as in the usual case. *McIntyre v. Codman & Shurtleff, Inc.*, 103 F.R.D. 619, 621 (S.D.N.Y.1984).

This Court's review of the circumstances surrounding plaintiffs' request to amend their complaint accords with that of Magistrate Roberts. The Magistrate found that plaintiffs' "eleventh-hour" request to add two new defendants to their complaint was a dilatory tactic which would unduly prejudice defendants. She concluded that plaintiffs appeared to be improperly motivated by a desire to defeat diversity and sidestep defendants' likely motion for summary judgment. After examining the memoranda and affidavits supplied by the parties, this Court is convinced that Magistrate Roberts committed no "clear error."

## CONCLUSION

For the reasons set forth in Magistrate Roberts' comprehensive Memorandum and Order, a copy of which is annexed to this opinion, plaintiffs' motion to modify the Magistrate's Order is denied.

SO ORDERED.

## MEMORANDUM AND ORDER

KATHLEEN A. ROBERTS, United States Magistrate:

This action was commenced in state court and removed here by defendants on June 6, 1986, on the basis of diversity of citizenship. Plaintiff Aries Ventures Limited ("Aries") is a New York corporation; plaintiff Raymond T. Mundy ("Mundy") is an attorney and president of Aries. Defendant Axa Finance S.A. ("Axa Finance") is a Swiss corporation with its principal business in Geneva, Switzerland; defendant Olivier Roussel ("Roussel") is a French citizen residing in Paris.

This action was reassigned to me from former Magistrate Ruth V. Washington on September 29, 1987, for supervision of discovery. Pursuant to my previous orders the parties substantially completed discovery on or about March 31, 1988, and defendants are prepared and eager to move for summary judgment. Presently before the court is a motion by plaintiffs for leave to file an amended complaint adding seven new claims and two new defendants—Axa Capital Corporation ("Axa Capital"), and Acor Capital Corporation ("Acor")—both of which are allegedly owned or "controlled" by defendants. Both Axa Capital and Acor are New York corporations whose addition to the action would destroy diversity and require that the case be remanded to state court.

For the reasons set forth below, plaintiff's request to add Acor and Axa Capital as defendants is denied and plaintiffs' motion to add claims against the present defendants is granted.

## ALLEGATIONS OF THE PRESENT COMPLAINT

Simply stated, the complaint alleges that between December 1980 and March or April 1985, plaintiff Mundy 1) performed services for Axa Capital, Acor, and Tred–2, Inc. ("Tred–2") (a corporation allegedly 80% owned by defendant Axa Finance), which are valued at $147,500, for which he was not paid, and 2) made loans totalling $63,-336 to these corporations or to their creditors, which, despite demands, have not been repaid.

The complaint alleges that defendant Axa Finance is "controlled" by defendant Roussel on behalf of himself and members of his immediate family and that Roussel, through Axa Finance, controlled the activities and affairs of Axa Capital and Acor (both allegedly owned by "the Roussel Family") and Tred–2. Based upon these allegations of "control" and on a theory that Roussel and Axa Finance were "undisclosed principals" acting through "agents" Acor, Axa Capital, and Tred 2, plaintiffs claim that Roussel and Axa Finance are liable for the sums due to Mundy and Aries.

The original complaint provides a detailed account of the transactions at issue and the relationships among plaintiffs, defendants Axa Finance and Roussel, and proposed defendants Acor and Axa Capital.

The complaint alleges that Mundy met with Roussel and with Eftim Pandeff, the president of Axa Capital, in December 1980, at the New York offices of Axa Capital, in connection with the proposed acquisition of property in DeQueen, Arkansas, where Tred–2 leased a shoe manufacturing facility ("the Property"). The owner of the Property was in default on certain loans made by the United States Economic Development Administration ("EDA"), a default which was apparently jeopardizing Tred–2's ability to maintain its manufacturing capability. Complaint ¶¶ 11–15. Although Roussel wanted to acquire the Property, Tred–2 itself did not have the capital to finance the acquisition. Roussel allegedly proposed that Acor, (whose sole directors were Roussel and his brother, Alain), purchase EDA's security interest in the Property. Complaint ¶¶ 16–18, 22.

Roussel allegedly "retained" Mundy and asked that he become president of Acor for the purpose of acquiring the Property. He then "directed" Mundy to prepare the necessary corporate documents to "facilitate" the closing and acquisition of EDA's interest in the Property. Complaint ¶¶ 19, 20. Mundy was elected president of Acor (by Roussel and his brother) shortly after the December 1980 meeting in New York. Complaint ¶ 21. Mundy alleges that between December 1980 and January 1982, he proceeded in his capacity as president of Acor to undertake various tasks necessary to the acquisition of the Property. Complaint ¶¶ 23–29. During this time Mundy advanced $6,500 from an Aries bank account to one of Tred–2's creditors. Complaint ¶ 30. Acor acquired title to the Property in April 1982, and two months later Roussel directed Mundy to transfer title from Acor to Axa Capital. Complaint ¶ 32. At about the same time, Roussel allegedly told Mundy that Axa Finance was the "beneficial owner" of the Property. Complaint ¶ 33. Mundy, on Roussel's "instructions," subsequently performed a number of tasks in connection with the dissolution of Acor, which occurred on October 31, 1982.

At unspecified times during the acquisition of the Property and the dissolution of Acor, Mundy allegedly advanced "sundry sums" from an Aries bank account for the payment of insurance and other charges with respect to the Property. Complaint ¶ 36. Following acquisition of the Property, it was leased to Tred–2, first by Acor, and then by Axa Capital. Tred–2 was in financial difficulties and could not pay its rent. Complaint ¶¶ 37, 38.

On or about October 1, 1982, Axa Finance entered into an agreement with Axa Capital, in which Axa Finance appointed Axa Capital as its exclusive managing

agent, with the understanding that Axa Finance and Roussel would reimburse Axa Capital for any costs. Complaint ¶¶ 39, 40. In reliance on this agreement Aries loaned approximately $37,161 to Axa Capital from November 1982. Complaint ¶ 41. Axa Capital allegedly used the loans from Aries to pay wages to employees of Tred–2, so that liens would not be asserted against the Property. In May 1983, Aries loaned another $26,175 to Axa Capital for "the same purpose." Complaint ¶ 43. Defendants Axa Finance and Roussel have refused to pay Axa Capital or to repay Aries for these loans. Complaint ¶ 44.

In August 1983, Axa Capital (and possibly Tred–2) defaulted on loans secured by the Property. Complaint ¶ 45. Plaintiffs allege that in August 1983 the "defendants" were advised of the "loan." Complaint ¶ 55. Axa Capital (as "agent for defendants") at an unspecified place, time, date, etc., then "retained" Mundy to "act" for Axa Capital and Tred–2 to reach a settlement with the bank. Complaint ¶ 46. Between August 1983 and April 1984, Mundy performed certain tasks in connection with the default on the loans as "directed" by Axa Capital, including matters related to a suit by the bank against Axa Capital and Tred–2 in Arkansas. Complaint ¶¶ 47–53. Plaintiffs allege that Mundy advised defendants of the unpaid loans and of their obligation to pay him for his services on November 11, 1984, and, on April 30, 1985, Mundy and Aries sent an invoice to defendants for $147,500 "for services rendered and disbursements made; the invoice also requested repayment of $76,003.67 representing the principal plus interest of the loans aforesaid to Axa Capital." Complaint ¶¶ 55, 56.

## THE PROPOSED AMENDED COMPLAINT

Shortly before the close of discovery plaintiffs advised the court that they wished to amend their complaint. Plaintiffs subsequently moved, on or about April 15, pursuant to Rule 15(a), Fed.R.Civ.P., for leave to file and serve an Amended Complaint, adding Acor and Axa Capital as defendants, and adding seven additional causes of action.

The first two "causes of action," brought by Aries and Mundy against Axa Finance and Roussel, are identical to the original complaint.

The proposed third cause of action is brought against Acor by plaintiff Mundy, pursuant to Section 1006(a)(4) and (b) of the New York Business Corporation Law ("BCL"). Section 1006(a)(4) and (b) permits a creditor to sue a dissolved corporation. Essentially, Mundy seeks to recover the value of services performed and expenses incurred by him on behalf of Acor ($52,-500). Since Acor itself is dissolved and without funds, however, plaintiffs apparently hope to recover from Roussel and/or Axa Finance by piercing the corporate veil or by establishing that Acor acted as agent for Roussel and/or Axa Finance as undisclosed principal.

The proposed fourth cause of action is brought against defendants Acor and Roussel by plaintiff Mundy pursuant to BCL § 719(a)(3). Section 719(a)(3) provides that the "directors of a corporation are jointly and severally liable to the corporation for the benefit of its creditors or shareholders for the corporation without paying or adequately providing for all known liabilities of the corporation * * *." BCL § 719(a)(3).

The proposed fifth cause of action is brought against Roussel by plaintiff Mundy, and appears to allege that, in obtaining loans from Mundy, Acor acted as an agent for Roussel as undisclosed principal, and that Roussel is therefore personally liable to Mundy for the loans totalling $63,336 that have not been repaid.

The proposed sixth cause of action is brought against Roussel by plaintiff Mundy, apparently on a theory of promissory estoppel. Mundy alleges that he performed services and incurred fees and expenses on behalf of Acor and on behalf of the Property with Roussel's full knowledge and written consent; that Roussel and his family were the sole beneficiaries of the services of payments made by Mundy; and that "[i]n equity, Roussel should be es-

topped to deny the existence of an agreement to pay Mundy's fees and expenses, and should pay Mundy the reasonable value thereof."

The proposed seventh cause of action is brought against Roussel by Mundy, and alleges that Roussel, as a director of Acor, retained Mundy and agreed to pay Mundy for his services, and caused Mundy to incur expenses on behalf of Acor when, at the time he made the agreement, Roussel "knew that Acor had no assets from which to pay Mundy and did not intend to pay Mundy himself." Mundy therefore alleges that Roussel's action is a "fraud on Mundy as a creditor of Acor for which Roussel is liable."

The proposed eighth cause of action is brought against Axa Capital, which is alleged to be "variously, the agent for Roussel, Acor and Axa Finance S.A." Plaintiffs allege that the president of Axa Capital (Pandeff), requested Mundy and Aries to perform services and requested Aries to make loans and other advances to Axa Capital and that Axa Capital has refused to pay these amounts ($210,836).

The proposed ninth cause of action appears to allege a double agency; i.e., that Axa Capital acted as an agent for Axa Finance, S.A., which in turn acted as an agent for Roussel as the undisclosed principal. Plaintiffs therefore allege that Roussel is personally liable for the amounts owed to plaintiffs by Axa Capital.[1]

## DISCUSSION

The Federal Rules of Civil Procedure provide that leave to amend "shall be freely given when justice so requires." Fed.R. Civ.P. 15(a). It is well-established in this Circuit that leave to amend should be permitted in the absence of an apparent or declared reason, such as undue delay, bad faith, or undue prejudice to the opposing party. *Hanlin v. Mitchelson,* 794 F.2d 834, 840 (2d Cir.1986). Absent a showing

of bad faith or undue prejudice, "mere delay" does not provide a basis for the district court to deny the right to amend. *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (quoting *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981)). However, where amendment of the complaint would defeat diversity jurisdiction, leave to amend should not be as freely given as in the usual case. *McIntyre v. Codman & Shurtleff, Inc.* 103 F.R.D. 619, 621 (S.D.N.Y.1984).[2]

Defendants oppose the proposed amendments on several grounds, including undue delay, failure to state a cause of action under BCL § 719(a)(3) (proposed fourth cause of action), failure to plead the required elements of promissory estoppel (proposed sixth cause of action), and insufficient evidence to support piercing Acor's corporate veil. Defendants also assert that they will be prejudiced by the remand of this action to state court because their trial preparation and strategy have been shaped by proceeding in a federal forum and because the resolution of the case will be substantially delayed by the need to obtain additional discovery and to bring in two corporations that are either defunct or inoperative.

Plaintiffs' eleventh-hour request to add Acor and Axa Capital as defendants strongly suggests a dilatory or other improper strategic motive. The central role of Axa Capital and Acor in the transactions at issue is apparent from the complaint; indeed, the names of both corporations appear in all capital letters throughout the complaint as do the names of defendants Axa Finance and Roussel. Moreover, defendants advised plaintiffs long before this action was commenced that their claims should be addressed to Acor or Axa Capital—a position defendants have continued

---

**1.** Plaintiffs have withdrawn their application to add a tenth claim alleging RICO violations.

**2.** Indeed, some courts have held that a party must be indispensable to allow joinder that would defeat federal jurisdiction. *See In re*

*Merrimack Mutual Fire Insurance Co.,* 587 F.2d 642, 647 (5th Cir.1978); *see also* 1A Moore's Federal Practice ¶ 0.161 [1.–3] (1983). Plaintiffs concede that neither Acor nor Axa Capital is an indispensable party to this action.

to assert throughout this litigation.[3] Despite these assertions, and despite plaintiffs' own allegations, plaintiffs took *no* discovery of Axa Capital or Pandeff, and recently advised the court that they have not even *attempted* to learn whether Axa Capital is still in business.

It seems clear to me that plaintiffs deliberately chose to focus their efforts on Roussel and Axa Finance because they believed (probably correctly) that Acor and Axa Capital were insolvent. They chose to ignore defendants' contention that if any monies are owed, they are owed by Axa Capital and Acor, and that plaintiffs will have to demonstrate that those corporations are liable as the first step in reaching defendants as their "undisclosed principals." The present belated motion to add Acor and Axa Capital is no doubt prompted by plaintiffs' concern that this strategy has left them at the close of discovery with insufficient evidence to withstand defendants' proposed motion for summary judgment.

Under all these circumstances, I find that a remand to state court and the unnecessary delays and costs inherent in the belated addition of one dissolved corporation (Acor) and another corporation that is in all likelihood defunct (Axa Capital) will severely prejudice defendants. Moreover, because both Acor and Axa Capital are in all probability insolvent, there is little to be gained (other than delay) by their joinder as defendants in this action. Plaintiffs, on the other hand, will suffer little (if any) prejudice by proceeding solely against the present defendants, because plaintiffs may present evidence regarding the liability of Axa Capital and Acor (and their agency relationship to defendants) whether or not Acor and Axa Capital are added as defendants. Accordingly, the motion to amend is denied insofar as it seeks to add Acor and Axa Capital as defendants. The motion is granted insofar as it asserts additional causes of action against Roussel and/or Axa Finance.[4] In order to ensure that plaintiffs (despite their inexcusable failure to conduct proper discovery) are not prejudiced in their ability to make a full evidentiary presentation with respect to Axa Capital, I will grant plaintiffs leave to conduct discovery with respect to Axa Capital to be concluded no later than September 30, 1988.[5]

Plaintiffs are directed to submit a revised Amended Complaint conforming to these rulings no later than August 26, 1988. All counsel are directed to appear before me on September 15, 1988 at 2:00 p.m. for a final status conference.

SO ORDERED.

---

**3.** See letter dated June 7, 1985, from Axa Finance to Mundy (marked as Exhibit 35 at Mundy's deposition.

**4.** Defendants may move to dismiss those causes of action that fail to state a claim.

**5.** Plaintiffs have represented to the court that the only additional discovery required by their proposed amended complaint is the deposition of Pandeff and document discovery from Axa Capital.