**RONDOUT LANDING AT THE STRAND, INC., Plaintiff**

v.

**HUDSON LAND DEVELOPMENT CORP., Jerard S. Hankin, Joel D. Hanig, Hankin, Hanig, Stall, Caplicki Redl & Curtin, LLP, Defendants**

No. 02 CIV. 10216(SCR).

United States District Court, S.D. New York.

March 7, 2005.

Thomas Beau Decea, Kurzman Eisenberg Corbin Lever & Goodman, LLP, White Plains, NY, for Plaintiff.

Kathleen A. Mishkin, Richard F. Liberth, Drake, Sommers, Loeb, Tarshis & Catania, P.C., Newburgh, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background

#### A. Factual History

John McClelland ("McClelland") and Frank and Anthony Longhitano (the "Longhitanos") are individuals who, at times relevant to this action, were engaged primarily in the ownership and management of real property, most of which is located in Ulster and Westchester Counties in the state of New York. The Longhitanos focused their activities on developing properties in Westchester County while McClelland developed properties primarily in Ulster County. McClelland and the Longhitanos performed these business activities through various business entities they formed beginning in the 1970s.

The Longhitanos owned two-thirds and McClelland owned the remaining one-third of the issued and outstanding stock of certain corporations: JAF Partners, Inc. ("JAF"), Landex, Inc. ("Landex"), Anderson Street Realty Corp. ("Anderson"), Rondout Landing at the Strand, Inc. ("Rondout") and East Main Street Corp. ("East Main"; JAF, Landex, Anderson, Rondout and East Main are collectively referred to herein as the "Jointly Owned Corporations"). McClelland and the Longhitanos also operated other entities, including Rondout Landing at the Strand HOA, Inc. ("Homeowners Ass'n"), which was an incorporated homeowners association connected to Rondout Inc. Another entity that is important to this action was Hudson Land Development Corp. ("HLDC"), of which McClelland owned all of the issued and outstanding stock.

Since 1998, McClelland, the Longhitanos and the various entities they controlled have been engaged in protracted and contentious litigation in state courts in Ulster and Westchester counties and in federal courts in the Southern and Northern Districts of New York. In November 1998, McClelland commenced an action against the Longhitanos in the Supreme Court of the State of New York in Ulster County ("Ulster County Action"). In this case, captioned *John McClelland, et al. v. Frank Longhitano, et al.*, McClelland alleged that the Longhitanos were using the assets of the Jointly Owned Corporations to acquire and develop real estate in which neither he nor the Jointly Owned Corporations had any interest. The Longhitanos counterclaimed in that action, alleging that McClelland committed various acts of misconduct, including converting funds of JAF and Landex and illegally transferring title

to townhouses owned by JAF to HLDC, which, as mentioned, was a corporation owned only by McClelland.

The second action, *JAF Partners, Inc. et al. v. John McClelland, et al.*, was filed by the Longhitanos in the Northern District of New York ("NDNY Action") in February 2001. The complaint in the NDNY case repeated all of the allegations raised in the counterclaim in the Ulster County Action while adding McClelland's lawyers and accountants as defendants, on the theory that McClelland committed various acts of misconduct with the help of his lawyers and accountants. The causes of action alleged in the NDNY action included a RICO claim, breach of fiduciary duty, repayment of legal and accounting fees, and legal and accounting malpractice.

At the same time that they filed the NDNY case, the Longhitanos removed the Ulster County Action to the Northern District of New York. The District Court remanded the Ulster County Action to state court and dismissed the NDNY case because of its repetition of allegations and claims previously asserted in the Ulster County Action.

Shortly thereafter, the Longhitanos filed another action in the Northern District of New York ("Second NDNY Action"), which was identical to the earlier NDNY Action. On December 13, 2001, the parties and their counsel, in the presence of a receiver appointed by the Ulster County court, agreed to a handwritten, fully-executed settlement (the "Settlement Agreement"), which discontinued the Ulster County Action, the Second NDNY Action, and all other proceedings and appeals pending at that time.

The Settlement Agreement required the various properties and entities owned by McClelland and the Longhitanos to be appraised but, after execution of the Settle-ment Agreement, new disputes arose between the parties regarding the appraisal process and, not surprisingly, further litigation ensued. On or about March 22, 2002, the Longhitanos commenced an action in the Supreme Court of the State of New York, County of Westchester ("Westchester Action") seeking, *inter alia,* specific enforcement of the Settlement Agreement and damages for fraud in the inducement. Shortly thereafter, McClelland filed a similar action against the Longhitanos in the Supreme Court of the State of New York, County of Ulster ("Second Ulster County Action"), also seeking specific performance and damages. The Second Ulster County action was removed and consolidated with the Westchester Action for all purposes, including trial, by order dated May 24, 2002 ("Consolidated Westchester Action").

In December 2002, the Longhitanos filed the original complaint in this action, naming two plaintiffs—Rondout and JAF and several defendants, including McClelland and HLDC. The Longhitanos subsequently filed an amended complaint that omitted JAF as a named plaintiff and acknowledged that JAF was party to the Settlement Agreement. The amended complaint asserted claims for violation of RICO, breach of fiduciary duty, unauthorized payment of legal fees, and legal and accounting malpractice—the same causes of action that were raised in the NDNY Action as to all defendants named in that case, and in the Ulster County Action as to McClelland.

On December 10, 2003, Justice Kenneth Rudolph of the Supreme Court, Westchester County, entered a money judgment in the Consolidated Westchester Action against McClelland and in favor of the Longhitanos in the amount of $1,299,341.90, together with statutory interest.[1] The court based this judgment in

---

1. *See Longhitano et. al. v. McClelland et. al.,* Index No. 4586/02, Sup.Ct. N.Y.2003.

part on its finding that McClelland had made false statements to, and concealed material facts from, the Longhitanos regarding the income and expenses of various corporations for the purpose of inducing them to enter into the Settlement Agreement and compromise their claims against McClelland for less than adequate consideration. Soon thereafter, McClelland appealed this decision, and the Longhitanos filed cross appeals, apparently claiming that they were entitled to even more money than they were awarded.

On December 19, 2003, McClelland filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Mr. McClelland's primary and most active creditors were Frank and Anthony Longhitano, and his Chapter 11 filing was precipitated by the entry of the money judgment in the Consolidated Westchester Action and the Longhitanos' attempts to execute thereon.

While McClelland's bankruptcy case was pending, McClelland and the Longhitanos engaged in settlement negotiations, which ultimately culminated in a final settlement ("Stipulation of Settlement") that was executed in June 2004. This agreement settled all claims which had been, could have been or were currently being asserted by or against the "Parties" to the Stipulation, which were defined to include only McClelland, Frank Longhitano and Anthony Longhitano.[2] Even though the Stipulation of Settlement was nominally between these individuals, it also finally resolved their respective ownership interests in the Jointly Owned Corporations and other assets involved in their businesses. Specifically, McClelland's interests in the Jointly Owned Corporations, HLDC and various

other properties were transferred to the Longhitanos in exchange for the difference between one third of the net equity in the Jointly Owned Corporations, HLDC and other entities, and the Consolidated Westchester Action money judgment with interest.

The litigation involving McClelland and the Longhitanos have not involved only them and entities that they controlled, however. Additional actions have involved claims brought against, among others, a woman to whom McClelland was engaged, McClelland's appraiser and, several third parties who were named defendants in this action, including Jerard Hankin, Joel Hanig and their law firm of Hankin, Hanig, Stall, Caplicki, Redl & Curtin, LP (the "Hanig Firm"; Hankin, Hanig and the Hanig Firm are collectively referred to herein as the "Law Firm Defendants"), who are lawyers who have provided relevant services, and Paul Mula and Kamen & Mula, who have provided accounting services. The Stipulation of Settlement resolved some but not all third party claims. Specifically, it provided that Mula, but not the Hanig Firm, was released from liability in connection with third party actions.

## B. Procedural Posture

As discussed, this action was filed in December 2002, after the Settlement Agreement was executed but before Justice Randolph ruled on its enforceability in December 2003 and before, most importantly, the Stipulation of Settlement between McClelland and the Longhitanos was signed in June 2004. Before the court

---

2. The Stipulation of Settlement explicitly required that the Parties file written stipulations in this case and other pending litigation terminating and discontinuing, with prejudice, any claim, cause of action or demand by any Party or Parties hereto against any Party or Parties hereto, excluding, however, any Third Party Claims included therein or joined therewith.

at this time are two motions filed by different groups of named defendants.

In April 2003, defendants McClelland and HLDC filed a joint motion to dismiss the amended complaint on three grounds: (1) plaintiff Rondout's counsel of record never authorized this lawsuit; (2) the claims raised have been released pursuant to the Settlement Agreement; (3) plaintiff has illegally obtained corporate records and privileged communications; and (4) plaintiff has failed to state a claim as a matter of law.

That same month, the Law Firm Defendants filed their own motion to dismiss on two grounds: (1) the Settlement Agreement released them from all claims; and (2) Plaintiff's seventh cause of action for repayment of legal fees and eighth cause of action for legal malpractice should be dismissed because Plaintiff has failed to state a legal malpractice claim. Shortly thereafter, Judge Mukasey converted this motion to dismiss to a motion for summary judgment, and allowed the parties a supplemental opportunity to provide briefing to the court.

After the Stipulation of Settlement was signed and the case was transferred to this court, Rondout agreed, by stipulation, to dismiss all claims against defendants McClelland, Paul J. Mula and Kamen & Mula. Defendant HLDC remains a defendant in this case.

## II. Analysis

### A. Applicable Standards

In considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court accepts as true all material factual allegations in the complaint and draws all reasonable inferences in favor of the non-movant. *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir.1996). The court may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.* at 891.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

### B. Motion to Dismiss Submitted on Behalf of McClelland and HLDC

As mentioned, this action has, by stipulation, been discontinued against McClelland, which leaves only HLDC as a defendant for the purposes of this motion. With respect to HLDC, it is important to recognize that the procedural posture of the case has changed significantly since the filing of the motion, and these developments require the court to consider HLDC's presence in this case differently.

In its motion papers, HLDC premised its motion to dismiss on various grounds, including its argument that Rondout's claims against it had been released pursuant to the Settlement Agreement. Since these papers were filed, Justice Rudolph has found that the Settlement Agreement was induced by fraud, and it therefore cannot provide the basis for granting HLDC's motion now.

■ That said, the court cannot ignore the extent to which the Stipulation of Settlement may well have released all claims against HLDC in this case. It is admittedly possible to interpret the Stipulation of Settlement as not releasing claims brought against HLDC. As mentioned, the Stipulation, by its terms, settled all claims "by any one or all of the Parties against the others" and separately defined "Par-

ties" to include only McClelland and the Longhitanos. But at the same time, the Stipulation explicitly recognized that the HLDC was a corporation wholly owned by McClelland and, as part of the Stipulation, required McClelland to transfer all of his interests in both Rondout, the plaintiff here, and HLDC to the Longhitanos. Moreover, the Stipulation's discussion of the release of claims frequently distinguishes between claims between the Parties and Third Party Claims, and any claims involving HLDC clearly do not constitute Third Party Claims. To allow Rondout's cause of action to go forward against HLDC would, therefore, essentially allow a cause of action by Rondout against itself.

Therefore, any claims against HLDC must also be dismissed.[3]

### C. Motion for Summary Judgment Submitted on Behalf of Hankin, Hanig and the Hanig Firm

Defendants Hankin, Hanig and the Hanig Firm have submitted a motion for summary judgment on two grounds: (1) the Settlement Agreement released them from all claims; and (2) Plaintiff has failed to state a legal malpractice claim. For reasons already discussed, the Settlement Agreement cannot, in light of Justice Rudolph's decision, provide a basis for dis-

missing claims against it in this case. Moreover, the Stipulation of Settlement clearly does not purport to settle claims against the Law Firm Defendants.

■ All that remains, therefore, is their partial motion to dismiss Plaintiff's seventh and eighth causes of action on the grounds that Rondout has failed to state a legal malpractice claim.[4] Under New York law, a claim for legal malpractice has three elements: "(1) the negligence of the attorney; (2) the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages." *Davis v. Klein,* 224 A.D.2d 196, 637 N.Y.S.2d 137, 139 (1st Dep't 1996) (citation and internal quotation marks omitted); *see also Hanlin v. Mitchelson,* 794 F.2d 834, 838 (2d Cir.1986).

■ Plaintiff Rondout has alleged that the Law Firm Defendants were retained by the Plaintiff and that their negligence caused the conversion of the equity of nine townhouses that Plaintiff owned. Specifically, Plaintiff claims that the Law Firm Defendants knew or should have known that Rondout's board of directors had not passed a resolution authorizing the sale of the townhouses and failed to advise the Longhitanos of the pending sale and subsequent transfer of title to the townhouses.[5] Moreover, Plaintiff argues that, had the Law Firm Defendants not been negli-

---

**3.** Even though Plaintiff did not, for whatever reason, include HLDC in its stipulation discontinuing its action against defendants McClelland, Mula and Kamen & Mula, there are reasons to believe that this result would nevertheless not be offensive to the plaintiff. In July 2004, Plaintiff submitted a letter to this court indicating its belief that, after the Stipulation of Settlement became effective, the only remaining defendants in this action would be Hankin, Hanig and the Hanig Firm. The court agrees.

**4.** Although it is true that Judge Mukasey converted the Law Firm Defendants' motion to one for summary judgment, it appears that

the motion was converted primarily to allow the parties to develop a record regarding the issue of whether the Settlement Agreement released claims against the Law Firm Defendants. It does not appear that the parties have developed a record on whether Rondout's legal malpractice claims are legally cognizable and, as such, Plaintiff's burden with respect to this part of the Law Firm Defendants' motion, at this stage, is correspondingly lower.

**5.** Plaintiff has also claimed that the Law Firm Defendants failed to disclose a conflict of interest in that they were simultaneously representing Rondout and McClelland individually.

gent, the unauthorized sales of the townhouses would have come to light in time for the Plaintiff to prevent them.

These allegations are sufficient to meet Plaintiff's burden at this stage of the case and, as such, Plaintiff's seventh and eighth causes of action should not be dismissed at this time.

### III. Conclusion

For the foregoing reasons:

HLDC's motion to dismiss is GRANTED.

Hankin, Hanig and the Hanig Firm's motion to dismiss/motion for summary judgment is DENIED.

It is so ordered.